**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ISAAC PAZ, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | Case No. 14-cv-09751 |
| v. | ) | |
| | ) | Hon. Jorge L. Alonso |
| PORTFOLIO RECOVERY | ) | |
| ASSOCIATES, LLC, | ) | |
| | ) | |
| DEFENDANT. | ) | |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON LIABILITY AND ON BONA FIDE ERROR AFFIRMATIVE DEFENSE AGAINST DEFENDANT PORTFOLIO RECOVERY ASSOCIATES, LLC

Plaintiff, Isaac Paz, submits this memorandum of law in support of his motion for summary judgment on liability on his claims against Defendant Portfolio Recovery Associates, LLC ("PRA" or "Defendant") under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. ("FDCPA") and Fair Credit Reporting Act, 15 U.S.C. §1681, *et seq.* ("FCRA"), and on its affirmative defense. For the reasons set forth in this memorandum, Plaintiff's motion, and Plaintiff's Local Rule 56.1(a)(3) Statement of Material Facts in Support of Motion for Summary Judgment on Liability (hereinafter "Plaintiff's Facts"), the Court should grant  summary judgment to Plaintiff and against Defendant on the claims stated below.

### UNDISPUTED FACTS

Jurisdiction of this Court arises under 15 U.S.C. §§1692k(d) and 1681p [Plaintiff's Fact No. 6]. Venue is appropriate in this federal district pursuant to 28 U.S.C. §1391(b)because a substantial part of the events giving rise to Plaintiff's claims occurred in this federal judicial district, Defendant

do business here, and because Defendant was subject to personal jurisdiction in the State of Illinois at the time this action commenced. [Plaintiff's Fact No. 6].

Plaintiff is a consumer allegedly obligated to pay a debt to Chase USA, N.A. for nonpayment of a credit card balance [Plaintiff's Fact Nos. 1-2] and he is thus a consumer as defined by 15 U.S.C. §1692a(3). [Plaintiff's Fact Nos. 1-2]. Defendant claims an alleged debt is owed by Plaintiff because he made charges on a Chase Bank USA, N.A. credit card which went into default. [Plaintiff's Facts No. 7,9].

The alleged debt is a "debt" as that term is defined by the Fair Debt Collection Practices Act, 15 U.S.C. §1692a(5), as it consist of charges solely for family, personal and household use. [Plaintiff's Facts No.7-12]. PRA is a "debt collector" as that term is defined by 15 U.S.C. §1692a(6). [Plaintiff's Facts No.4,9,11]. PRA attempted to collect the alleged debt via credit reporting and via letters mailed to Plaintiff via his counsel. [Plaintiff's Facts No. 54-62, 19-31].

On July 25, 2014, as part of the settlement of an FDCPA case titled *Paz v Portfolio Recovery Associates,* Case No 14cv4449 filed in the Northern District of Illinois, Plaintiff and PRA agreed to eliminate a debt owed to PRA in the amount of $694.51, and delete the tradeline associated with the debt so that it would not be reported on any credit report of Plaintiff. [Plaintiff's Facts No.14-18].

Instead of eliminating the debt as promised and requesting that the debt be deleted from Plaintiff's credit reports, PRA continued to attempt to collect the alleged debt via mailing letters to Plaintiff's counsel and by credit reporting the debt so that third parties obtaining Plaintiff's credit report (and Plaintiff) would see that Plaintiff still owed the alleged debt. [Plaintiff's Facts No.34]. Specifically, PRA repeatedly communicated to the TransUnion, Experian and Equifax credit reporting agencies that Plaintiff owed $694.51 to PRA—and did so no less than on 21 occasions between July 25, 2014 and February, 2015. [Plaintiff's Facts No.19-31]. PRA did not cease credit reporting the alleged debt, and did not submit a request to the credit reporting agencies to cease

2

reporting the debt, until February 24, 2015. [Plaintiff's Fact No.17]. PRA repeatedly disregarded Plaintiff's disputes of the alleged debt between July 25, 2014 and February 24, 2015, communicated to TransUnion, Experian, and Equifax via the FCRA's reinvestigation process, and verified that Plaintiff owed the debt each time even though Plaintiff expressly informed PRA, on each occasion, that the debt was cancelled via a previous agreement between PRA and Plaintiff. [Plaintiff's Facts No. 37, 40, 43, 47, 48].

PRA also mailed to letters to Plaintiff, via his counsel, informing Plaintiff that his dispute was without merit, that the dispute was resolved in favor of PRA, that PRA will report the debt as unpaid, and that $694.51 is still owed to PRA from Plaintiff. [Plaintiff's Facts No. 54-62]. Though PRA *now* stipulates that Plaintiff did not owe PRA any money after July 25, 2014, and that the debt should not have been reported to any credit reporting agency as being owed after July 25, 2014 [Plaintiff's Facts No.16-17], PRA noted Plaintiff's dispute as being "frivolous" in its collection notes. [Plaintiff's Facts No.59]. Though PRA concedes that it obtained a copy of the operative complaint on or around December 5, 2014—thus becoming aware that the debt was still being falsely reported at that time—it did not seek that the debt be deleted from Plaintiff's credit until February 24, 2015. [Plaintiff's Facts No.32, 66-68].

PRA has asserted that it has policies in place adapted to prevent the violations asserted, yet it admits that, despite being a billion-dollar company, it has no *written* policies in place for this purpose. [Plaintiff's Facts No.65]. Despite the foregoing 7-month period of continued debt collection after the debt was cancelled, PRA maintains that the dispute by Plaintiff "was properly handled via policy and procedure". [Plaintiff's Fact No.64]. Plaintiff suffered emotional distress as the result of PRA's actions. [Plaintiff's Facts No.63].

## ARGUMENT

### I. STANDARD OF REVIEW

3

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(c). The moving party bears the burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986); *Cedillo v. Int'l Assoc. of Bridge & Structural Iron Workers, Local Union No. 1,* 603 F.2d 7, 10 (7th Cir, 1979). Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

## II. THE FAIR DEBT COLLECTION PRACTICES ACT

Congress left little guesswork as to why it adopted the FDCPA. Indeed, when enacting the FDPCA, Congress recognized the universal agreement among scholars, law enforcement officials, and even debt collectors that the number of persons who willfully refuse to pay just debts is minuscule [sic]. . . . [T]he vast majority of consumers who obtain credit fully intend to repay their debts. When default occurs, it is nearly always due to an unforeseen event such as unemployment, overextension, serious illness, or marital difficulties or divorce. S. Rep. No. 382, 95th Cong., 1st Sess. 3 (1977), *reprinted in* 1977 USCCAN 1695, 1697. The FDCPA states that its purpose, in part, is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. §1692(e). The Act is designed to protect consumers from unscrupulous collectors, whether or not there is a valid debt. *Mace v. Van Ru Credit Corp.*, 109 F.3d 338 (7th Cir. 1997); *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998); *Baker v. G.C. Services Corp.*, 677 F.2d 775, 777 (9th Cir. 1982); *McCartney v. First City Bank*, 970 F.2d 45, 47 (5th Cir. 1992). The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses or abuses any debtor; and any false,

deceptive or misleading statements, in connection with the collection of a debt. The Act also requires debt collectors to give debtors certain information. 15 U.S.C. §§1692d, 1692e, 1692f and 1692g.

The Seventh Circuit has held that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of an "unsophisticated consumer." *Avila v. Rubin*, 84 F.3d 222 (7th Cir. 1996); *Gammon v. GC Services, LP*, 27 F.3d 1254 (7th Cir. 1994). The test is an objective one –"turning not on the question of what the debt collector knew but on whether the debt collector's communication would deceive or mislead an unsophisticated, but reasonable, consumer." *Wahl v. Midland Credit Mgmt.*, 556 F.3d 643, 646 (7th Cir. 2009) (quoting *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 995 (7th Cir. 2003).

The FDCPA encourages consumers to act as "private attorneys general" to enforce the public policies expressed therein. *Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 666 (7th Cir. 2001); *Baker*, 677 F.2d at 780; *Whatley v. Universal Collection Bureau*, 525 F. Supp. 1204, 1206 (N.D. Ga. 1981). "Congress intended the Act to be enforced primarily by consumers . . . ." *FTC v. Shaffner*, 626 F.2d 32, 35 (7th Cir. 1980). "Congress painted with a broad brush in the FDCPA to protect consumers from abusive and deceptive debt collection practices, and courts are not at liberty to excuse violations where the language of the statute clearly comprehends them . . . ." *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 27 (2d Cir. 1989).

Because it is part of the Consumer Credit Protection Act, 15 U.S.C. §§1601 *et seq*., the FDCPA should be liberally construed in favor of the consumer to effectuate its purposes. *Cirkot v. Diversified Fin. Services, Inc.*, 839 F.Supp. 941 (D. Conn. 1993).

The [Consumer Credit Protection] Act is remedial in nature, designed to remedy   what Congressional hearings revealed to be unscrupulous and predatory creditor practices throughout the nation. Since the statute is remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated. *N.C. Freed Co. v. Board of Governors*, 473

5

F.2d 1210, 1214 (2d Cir. 1973). Statutory damages are recoverable for violations, whether or not the consumer proves actual damages. *Bartlett v. Heibl*, 128 F.3d 497, 499 (7th Cir.1997).

Plaintiff need not prove intent, bad faith or negligence in an FDCPA case. *Gearing v. Check Brokerage Corp.*, 233 F.3d 469, 472 (7th Cir.2000). The "FDCPA is a strict liability statute," and "proof of one violation is sufficient to support summary judgment for the plaintiff." *Cacace v. Lucas*, 775 F. Supp. 502, 505 (D. Conn. 1990); *Accord, Turner v. J.V.D.B. & Associates, Inc.*, 330 F.3d 991, 995 (7th Cir. 2003). *Gearing*, 233 F.3d at 472.

### III.    THE PREREQUISITE FDCPA DEFINITIONS ARE SATISFIED

To succeed on his claims, Plaintiff must first prove that he is a "consumer," that each Defendant is a "debt collector," that Defendant sought to collect a "debt" from Plaintiff, and that the Defendant's April Letter was a "communication" as each of these terms is defined by the FDCPA.

#### A. Plaintiff Owed a "Debt" as Defined by the FDCPA

Pertinent here is the FDCPA's definition of "debt," followed by the definitions of "consumer," "debt collector," and "communication," each of which are defined using the word "debt."  "Debt", according to 15 U.S.C. §1692a(5):

> **means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.**

PRA has admitted that they attempted to collect a defaulted financial obligation allegedly owed to PRA by mailing letters and by credit reporting. [Plaintiff's Fact Nos. 9, 19-29, 54-57, 60-62 ]. PRA has no evidence that the alleged debt was incurred for business purposes. [Plaintiff's Fact No. 10, 12]. Thus, this action involves a "debt" within the meaning of the FDCPA. [Plaintiff's Fact No. 7, 8, 9].

#### B. Plaintiff is a "Consumer" as Defined by the FDCPA

"The term 'consumer' means any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. §1692a(3). Plaintiff is a consumer as we was allegedly obligated to pay the alleged debt to PRA. [Plaintiff's Facts No.1, 2].

### C. Defendant is a "Debt Collector" as Defined by the FDCPA

Defendant admits that it is a "debt collector" within the meaning of 15 U.S.C. §1692a(6), as it regularly collects, and attempts to collect, debts incurred, or alleged to have been incurred, for personal family or household purposes. [Plaintiff's Fact No. 4].

The purchaser of a debt in default is a debt collector for purposes of the FDCPA even though it owns the debt and is collecting for itself. *Schlosser v. Fairbanks Capital Corp.,* 323 F.3d 534, 536, 538-539 (7th Cir. 2003) *see also FTC v. Check Investors, Inc.,* 502 F.3d 159, 171-74 (3d Cir. 2007) (holding that an entity engaged in collection activity on a defaulted debt acquired from another is a "debt collector" under the FDCPA even though it "may actually be owed the debt").

Here, PRA purchases defaulted consumer accounts, such as that allegedly owed by Plaintiff, for the purpose of subsequently collecting the same. [Plaintiff's Fact No. 4, 9,11,13]. By purchasing defaulted consumer debts that it thereafter attempts to collect, PRA satisfies the FDCPA definition of a "debt collector". See *McKinney v. Cadleway Properties*, 548 F.3d 496 (7th Cir. 2008) (the Act "treats debt assignees as debt collectors if the debt sought to be collected was in default when acquired by assignee, and as creditors if it was not.").

### D. Both the November 7, 2014 and the November 14, 2014 Letters were an attempt to collect the alleged debt, and thus each was a "communication" as that term is defined under 15 U.S.C. §1692a(2)

For the FDCPA to apply, the communication by the debt collector that forms the basis of the suit must have been made "in connection with the collection of any debt."

§§ 1692c(a)-(b), 1692e, 1692g. *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 384 (7th Cir. Ill. 2010) "The term 'communication' means the conveying of information regarding a debt directly or indirectly to any person through any medium." *15 U.S.C. § 1692a*(2).

PRA's November 7, 2014 letter cannot be seen as anything other than being sent in connection with the collection of the alleged debt. In fact, it states just that: "this communication is from a debt collector and is an attempt to collect a debt". [Plaintiff's Facts No. 54-57]. It also states "if you do not pay the debt, we may report it to the credit reporting agencies as unpaid", and further states a "current balance" of $694.51, which it obviously was still attempting to collect from Plaintiff. [Plaintiff's Facts No. 54-57]. The letter was a "communication" under 15 U.S.C. §1692a(2).

Similarly, PRA's November 14, 2014 letter was also sent in connection with the collection of a debt. The Letter states: that there is a "Balance" of $694.51 on the alleged debt, that "this communication is from a debt collector and is an attempt to collect a debt", and that it "considers this matter (Plaintiff's dispute that he owed the debt) closed". [Plaintiff's Facts No. 60, 62]. As the letter seeks to collect a defaulted consumer debt from Plaintiff, its an attempt to collect a debt. [Plaintiff's Facts No. 60-62]. By indicating that it considers the matter closed, PRA communicated that Plaintiff's dispute was without merit, and the debt was still owed and collectible. [Plaintiff's Facts No. 60-62]. The letter was thus a "communication" under 15 U.S.C. §1692a(2).

E.    **Each Update Made by PRA to the Equifax, Experian and TransUnion Credit Reporting Agencies was a "Communication" relating to the Alleged Debt**

Between August 2014 and February 2015, PRA communicated monthly updates relating to the alleged debt to each of the Experian, Equifax and TransUnion credit reporting agencies, each said update communicating that Plaintiff owed a balance of $694.51 to PRA. [Plaintiff's Facts Nos. 19-31]. These communication were transmitted to the credit reporting agencies even though

8

no debt was owed after July 25, 2014 [Plaintiff's Facts No. 16-18], and even though PRA agreed that no credit reporting would occur after July 25, 2014. [Plaintiff's Fact No. 17]. Though the alleged debt had ceased to exist, each communication was made in connection with the collection of a debt. *Akalwadi v. Risk Management Alternatives, Inc.*, 336 F.Supp.2d 492, 503 n. 4 (D.Md.2004) (stating that "reporting the status of a consumer debt to a credit reporting agency is an activity that would certainly appear to meet the statute's requirement that the false, deceptive, or misleading representation or means be "in connection with" the collection of a debt.").

### IV. PRA REPEATEDLY VIOLATED 15 U.S.C. §1692e(8) OF THE FDCPA WHEN IT FALSELY COMMUNICATED TO THE EQUIFAX, TRANSUNION, AND EXPERIAN CREDIT REPORTING AGENCIES THAT PLAINTIFF OWED MONEY TO PRA, ON WELL OVER A DOZEN OCCASIONS, AFTER THE DEBT WAS ELIMINATED IN JULY, 2014

Section 1692e(8) provides, in pertinent part that, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section . . . (8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8). "Communication" under the FDCPA is defined as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2). *Luxenburg v. Equifax Credit Info. Servs*., 2005 U.S. Dist. LEXIS 426, *12-13, 2005 WL 78947 (N.D. Ill. Jan. 5, 2005). The section applies even when a false representation is unintentional." *Turner v. J.V.D.B. & Assocs., Inc*., 330 F.3d 991, 995 (7th Cir. 2003); *Andersen v. Riverwalk Holdings Ltd*., 2015 U.S. Dist. LEXIS 162403, *8 (E.D. Wis. Dec. 2, 2015). A credit reporting agency **is** a "person" under this provision. *See, e.g.*, *Brady v. Credit Recovery Co.*, 160 F.3d 64, 67 (1st Cir. 1998).

Notably, credit reporting is a powerful tool, or weapon even, that creditors and debt collectors commonly use in order to induce payment by consumers. See *Sullivan v. Equifax, Inc.*, 2002 WL 799856 *4 (E.D.Pa.2002) (noting that "reporting a debt to a credit reporting agency is 'a powerful tool designed, in part, to wrench compliance with payment terms'...."), citing *Rivera v. Bank One*, 145 F.R.D. 614, 623 (D.PR.1993); *Akalwadi v. Risk Management Alternatives, Inc.*, 336 F.Supp.2d 492, 503 n. 4 (D.Md.2004) (stating that "reporting the status of a consumer debt to a credit reporting agency is an activity that would certainly appear to meet the statute's requirement that the false, deceptive, or misleading representation or means be "in connection with" the collection of a debt.");  *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385 (4th Cir. 2014); See also *Randolph v. Northeast Legal Group, L.L.C.*, 2014 WL 2819122 (N.D. Ala. May 23, 2014), adopted by, 2014 WL 2740309 (N.D. Ala. June 16, 2014) (two debt buyers violated § 1692e(8) by reporting to a CRA about a paid medical debt, one reporting the wrong year of payment and the other that it was still due); *Fritz v. Resurgent Capital Servs., L.P.*, 955 F. Supp. 2d 163 (E.D.N.Y. 2013) (collector violated §§ 1692e(2)(A) and 1692(e)(8) by misrepresenting to CRA the amount of the consumer's debt by adding court costs incurred from the state collection suit that was still pending—and that ultimately was discontinued because under applicable state law "a party is not liable for court costs unless and until there is a judgment in favor of the opposing party").

Here, PRA has violated § 1692e(8) by communicating false credit information to the TransUnion, Equifax, and Experian credit reporting agencies. PRA concedes that the debt was eliminated on July 25, 2014, and thus that Plaintiff owed no money to PRA after July, 2014. [Plaintiff's Facts No. 14-18]. PRA also admits that the alleged debt should not have been communicated to any credit reporting agency after July 25, 2014. [Plaintiff's Fact No. 17]. Despite this fact, PRA *continued* to falsely communicate to the Equifax, Experian and TransUnion credit reporting agencies—on a monthly basis from August, 2014 until February 2015—that Plaintiff still owed $694.51 to PRA.

10

[Plaintiff's Facts Nos. 19-32]. PRA knew that Plaintiff did not owe any money to PRA since it entered into an agreement to eliminate the alleged debt . [Plaintiff's Facts Nos. 14-15], yet it falsely communicated that Plaintiff **did** owe money <u>at least 21 times</u> between August 2014 and February 2015. [Plaintiff's Facts Nos. 19-31]. For these reasons, PRA communicated credit information to the credit reporting agencies (here that Plaintiff owed $694.51) that it knew to be false, in violation of 15 U.S.C. § 1692e(8).

### V.  THE 7TH CIRCUIT HAS HELD THAT IT IS A VIOLATION OF THE FDCPA TO IMPLY THAT CERTAIN OUTCOMES COULD BEFALL A DEBTOR WHEN LEGALLY THOSE OUTCOMES CANNOT COME TO PASS

**A.     Portfolio's Letter dated November 7, 2014 Violates 15 U.S.C. §§ 1692e(5), e(8) and e(10) of the FDCPA.**

Portfolio's mailing of the November 7, 2014 letter to Plaintiff violates 15 U.S.C. §§

1692e(5), e(8) and e(10) of the FDCPA, which provide:

**§ 1692e. False or misleading representations**

**A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section:**

**(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.**
**…**
**(8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.**
**…**
**(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.**

1692e(5), e(8) and e(10)

Threats to report debts to credit reporting agencies where the debt could not legally be reported has been held to be deceptive and unfair in violation of the FDCPA, 15 U.S.C. §§ 1692 e, f. See *Gonzales v. Arrow Financial Srvs.*, 660 F. 3d 1055, 1062 (9th Cir. 2011). In *Gonzalez*, a debt

collector sent a collection letter that stated "if we are reporting the account, the appropriate credit bureaus will be notified that this account has been settled." *660 F.3d at 1059*. The court held, "As there is no circumstance under which Arrow could legally report an obsolete debt to a credit bureau, the implication that Arrow could make a positive report in the event of payment is misleading." *Id. at 1063*. In reaching this conclusion, the 9th Circuit reasoned that "conditional language, particularly in the absence of any language clarifying or explaining the conditions, does not insulate a debt collector from liability." *Id.*

Importantly, the 7th Circuit recently expressed its agreement with the Ninth Circuits' decision in *Gonzalez. Lox v. CDA, Ltd.*, 689 F.3d 818 (7th Cir. 2012). In *Lox*, the 7th Circuit cited the decision in *Gonzalez*, holding that the decision "established that it is improper under the FDCPA to imply that certain outcomes may befall a delinquent debtor when, legally, those outcomes cannot come to pass. *Id*. At 825. The *Lox* court expressly stated its agreement with the 9th Circuit's advice to debt collectors: "When language in a debt collection letter can reasonably be interpreted to imply that the debt collector will take action it has no intention or ability to undertake, the debt collector that fails to clarify that ambiguity does so at its own peril." *Lox* at 825, citing *Gonzales*, 660 F.3d at 1063.

Relying on *Lox* and *Gonzalez*, Judge Durkin recently granted summary judgment to a consumer in a case involving this same Defendant, PRA, finding it violated section 1692e. Specifically, PRA mailed a letter that stated in part as follows:

> **NOTICE: If this account is eligible to be reported to the credit reporting agencies by our company, we are required by law to notify you that a negative credit report reflecting on your credit records may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligation.**

*Slick v. Portfolio Recovery Assocs., LLC*, 2014 U.S. Dist. LEXIS 115471, *13 (N.D. Ill. Aug. 20, 2014)

At the time that PRA mailed the letter, which implied that credit reporting could still occur,

the period during which credit reporting could legally occur had already passed. *Id*. at *16.  In light

of that fact, because the letter was mailed after credit reporting could no longer legally occur, Judge

Durkin found that the information contained in the letters was both false and misleading, as well as

implied that PRA could take action it was legally prohibited from doing. PRA was thus found to

have violated the FDCPA, section 1692e. *Id*. at *17-18.

Here, Portfolio's letter dated November 7, 2014 states in part as follows:

**If you do not pay the debt, we may report it to the credit reporting agencies as unpaid.**

[Plaintiff's Facts Nos. 54-57].

The facts here are strikingly akin to those in *Slick* and *Gonzalez*, and evidence that PRA

admittedly threatened credit reporting on Plaintiff's account when such reporting was legally

proscribed. PRA's letter implies the possibility of the account being reported, though PRA

concedes that no reporting should have occurred after July 25, 2014. [Plaintiff's Facts Nos. 16-18].

Based on the foregoing, there is thus no material dispute that, at the time it mailed its letter dated

November 7, 2014, to Plaintiff, PRA was not allowed to report information regarding the alleged

debt to the credit reporting agencies. As in *Gonzalez*, Portfolio had no intention or ability to cause

the alleged debt to be reported on any credit report, yet it mailed a letter that would suggest the

possibility that it could. *Lox* at 825, citing *Gonzales*, 660 F.3d at 1063. PRA's letter violates section

1692 e(5), which prohibits a debt collector from making a "threat to take an action that cannot

legally be taken or that is not intended to be taken."  §1692e(5).

When language in a debt collection letter, as that used here, can reasonably be interpreted to

imply that the debt collector will take action it has no intention or ability to take, the debt collector

that fails to clarify that ambiguity does so at its own peril. *Evory v. RJM Acquisitions Funding, LLC*,

505 F.3d 769, 778- 779 (7th Cir. 2007); *Ruth v. Triumph P'ships*, 577 F.3d 790, 801-02 (7th Cir. 2009).

The November 7, 2014 letter is thus misleading in light of the admitted fact that Plaintiff's debt

13

should not have been reported and was could not legally be reported, and such false statement thus violates 15 U.S.C. §1692e(10).

PRA similarly violated 15 U.S.C. §1692e(8) by mailing the November 7, 2014 letter. Specifically, the letter was mailed to Plaintiff's counsel in response to *Plaintiff's* dispute—made directly by him to each credit reporting agency, Experian, Equifax and TransUnion. 1692e provides: Without limiting the general application of the foregoing, the following conduct is a violation of this section . . . (8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8). As stated, a "communication" under the FDCPA is defined as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2). *Luxenburg v. Equifax Credit Info. Servs*., 2005 U.S. Dist. LEXIS 426, *12-13, 2005 WL 78947 (N.D. Ill. Jan. 5, 2005). PRA's November 7, 2014 letter stating that Plaintiff owed $694.51 to PRA communicates false credit information (i.e. that it may report the $694.51 as unpaid) to both Plaintiff and his counsel, in violation of 15 U.S.C. § 1692e(8).

## VI.   PRA'S NOVEMBER 7, 2014 AND NOVEMBER 14, 2014 LETTERS VIOLATE 15 U.S.C. §1692e(2)(A)

§ 1692e generally prohibits "false, deceptive or misleading" collection activities. More specifically, as it applies to this situation, the provision prohibits the "false representation" of "the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A). "§ 1692e(2)(A) creates a strict-liability rule," and "debt collectors may not make false claims, period." *Randolph v. IMBS, Inc*., 368 F.3d 726, 730 (7th Cir. 2004). Ignorance is no excuse and the provision applies "even when a false representation was unintentional." *Turner v. J.V.D.B. & Assocs., Inc*, 330 F.3d 991, 995 (7th Cir.

2003) (quoting *Gearing v. Check Brokerage Corp.*, 233 F.3d 469, 472 (7th Cir. 2000)); see also *Randolph*, 368 F.3d at 728 (stating that a "debt collector's false statement is presumptively wrongful" under § 1692e(2)(A) even if the speaker is ignorant of the truth).

It is undisputed that PRA stated that Plaintiff owes $694.51 in each of the two letters (dated November 7, 2014 and November 14, 2014) it mailed to Plaintiff, via his counsel. [Plaintiff's Facts Nos. 54-57, 60-61]. It is also beyond dispute that the November 7, 2014 letter stated "if you do not pay the debt, we may report it to the credit reporting agencies as unpaid". [Plaintiff's Facts Nos. 57].

Just as there is no dispute that PRA sought to collect $694.51 from Plaintiff and threatened that it may report the debt as unpaid, it is also undisputed that Plaintiff owed no money to PRA at the time the letters were mailed [Plaintiff's Facts Nos. 16-18], and that PRA could not legally report the debt to any credit reporting agency when the letters were mailed. [Plaintiff's Facts Nos. 17, 58]. Thus, the claim for $694.51 sought in each letter was a "false representation" of "the character, amount, or legal status" of the debt, in violation of 15 U.S.C. § 1692e(2)(A), as is the false statement that the debt could be reported as unpaid. As the Seventh Circuit has made clear, this is true even though PRA may claim that it (or a particular department within PRA) was unaware that the amount claimed in the letters was incorrect. See, e.g., *Randolph*, 368 F.3d at 728. See also *Alexander v. Unlimited Progress Corp.*, 2004 U.S. Dist. LEXIS 21013, No. 02 C 2063, 2004 WL 2384645 at *3 (N.D. Ill. Oct. 20, 2004) (Schenkier, M.J.); *Blum v. Lawent*, 2004 U.S. Dist. LEXIS 21846, No. 02 C 5596, 2004 WL 2191612 at *3 (N.D. Ill. Sept. 27, 2004) (Pallmeyer, J.); *Gonzalez v. Lawent*, 2005 U.S. Dist. LEXIS 9504, *15-16, 2005 WL 1130033 (N.D. Ill. Apr. 28, 2005). As a matter of law, the letters mailed by PRA in this case made false statements in violation of § 1692e(2)(A).

## VII. PRA'S NOVEMBER 7, 2014 AND NOVEMBER 14, 2014 LETTERS VIOLATE 15 U.S.C. §1692f(1)

The FDCPA provides that "[a] debt collector may not use unfair or unconscionable means to

collect or attempt to collect any debt." 15 U.S.C. § 1692f. That includes "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." Id. § 1692f(1). *Snyder v. Ocwen Loan Servicing, LLC*, 2015 U.S. Dist. LEXIS 54473, *9 (N.D. Ill. Apr. 27, 2015).

It is undisputed that PRA stated that Plaintiff owes $694.51 in each of the two letters (dated November 7, 2014 and November 14, 2014) it mailed to Plaintiff, via his counsel. [Plaintiff's Facts Nos. 54, 57, 61]. As stated and conceded, Plaintiff owed no money to PRA at the time the letters were mailed [Plaintiff's Facts Nos. 16-18]. PRA's letters thus each attempted to collect amounts not permitted by law, since an agreement was entered into that the debt was to be eliminated on July 25, 2014, and thus collection of the debt thereafter violated the agreement. [Plaintiff's Facts Nos. 14-18]. PRA thus violated § 1692f(1) by mailing the letters to Plaintiff.

### VIII. PORTFOLIO'S VIOLATIONS WERE MATERIAL

PRA attempted to collect an alleged debt from Plaintiff through misleading and deceptive means, and where such collection is not permitted by law, in violation of 15 U.S.C. §1692e(5) and e(10), and f(1), respectively. PRA also communicated false credit information to the credit reporting agencies in violation of §1692e(8). In *Hahn v. Triumph* Partnerships, 557 F.3d 755, 757 (7th Cir. 2009), the 7th Circuit held that a debt collector is only liable for false statements that are also material. It defined a statement as being material if it has the "ability to influence a consumer's decision". *Id*. at 757.

Here, PRA's language relating to the potential of credit reporting in its November 7, 2014 letter to Plaintiff constituted not only a false statement, but a materially false statement. First, PRA's statement regarding credit reporting were actually false: there was no circumstance under which

PRA could have legally reported any credit information relating to the alleged debt, to any credit reporting agency, at the time that it sent its letters to Plaintiff. [Plaintiff's Facts Nos. 16-18].

Second, Portfolio's misleading statements were material for the reason that said statements had the potential to induce Plaintiff to believe that Portfolio's tradeline was legally being reported, or that it would continue to be reported until he paid. Specifically, PRA's statements did induce Plaintiff to act when, after observing that the PRA tradeline was still reporting that he owed $694.51 after the debt was eliminated in July, 2014, Plaintiff sent an email to PRA requesting a settlement to pay what was being reported even though he no longer owed it because he was, in his words, "desperate" and afraid that he would lose his job if it continued to be reported. [Plaintiff's Fact No. 52]. Because Plaintiff clearly was induced to attempt to pay a debt he did not owe for fear of losing his job, the communications by PRA to the credit reporting agencies indicating that Plaintiff owed money were not only false, but were also material.

Third, PRA's statements in each letter to Plaintiff are material because each letter communicates to both Plaintiff and his counsel not only that Plaintiff owes $694.51 to PRA, but also that the matter is resolved in favor of PRA, and that the dispute is closed. [Plaintiff's Facts Nos. 54-62]. There would thus be nothing left for Plaintiff to do but to pay the debt if he wanted it off his credit. PRA's letters containing false information are thus material. (*See Hahn v. Triumph Partnerships*, 557 F.3d 755, 757 (7th Cir. 2009)). Indeed, a statement is material if it has the "ability to influence a consumer's decision". *Id*. at 757. In this case, a misrepresentation that relates to the credit reporting of the debt cannot be seen as anything but material, as it affects the debtor in his decision on whether to pay a debt, or to wait until the debt comes off a report due to the passing of time. *See, e.g, Daley v A & S Collection Associates*, 717 F.Supp.2d 1150, 1155, D.Or. (2010). Because PRA's misrepresentations are material, Plaintiff is entitled to judgment on his claims.

### IX.     DEFENDANTS CANNOT PREVAIL ON A BONA FIDE ERROR DEFENSE AS A MATTER OF LAW, SINCE THEY HAVE ADMITTED THAT THEY DO NOT MAINTAIN PROCEDURES ADAPTED TO PREVENT VIOLATION OF THE ACT

Under the FDCPA, a debt collector may not be held liable for violating the Act "if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). Accordingly, Defendants  may assert the bona fide error defense if they can show that the violation at issue "(1) was unintentional; (2) resulted from a bona fide error; and (3) occurred despite the defendant's maintenance of procedures reasonably adapted to avoid such error." *Ruth v.  Triumph P'ships*, 577 F.3d 790, 803 (7th Cir. 2009) 577 ; *Kort v. Diversified Coll. Servs., Inc.*, 394 F.3d 530, 537 (7th Cir. 2005).

A "bona fide error" is one genuinely made in good faith, *Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 537 (7th Cir. 2005), but it applies only to mistakes of fact, not of law. *Jerman v. Carlisle, McNellie, Kramer & Ulrich LPA*, 130 S. Ct. 1605, 1624, 176 L. Ed. 2d 519 (2010) (emphasis added). "A violation resulting from a debt collector's misinterpretation of the legal requirements of the FDCPA cannot be "not intentional" under §1692k(c). J*erman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 130 S. Ct. 1605, 1606-1607 (U.S. 2010). Further, it is a common maxim that "ignorance of the law will not excuse any person, either civilly or criminally." Id. citing *Barlow v. United States*, 32 U.S. 404, 7 Pet. 404, 411, 8 L. Ed. 728. It is similarly not an excuse here.

PRA asserts a "bona fide error" defense here, alleging that it "has in place detailed procedures for dealing with any and all consumer disputes which involve investigation of each dispute and communication with the debtor regarding the dispute, in an attempt to resolve the same." [Plaintiff's Fact No. 67]. Written discovery and deposition testimony, however, has shown otherwise.

18

Incredibly, PRA <u>admits</u> that no written policies exist that are adapted to prevent the violations asserted. [Plaintiff's Fact No. 65]. For a multi-billion dollar corporation to not have *written* policies relating to ensuring that a debt that is eliminated by PRA, pursuant to debt cancellation which regularly comprises an aspect of FDCPA settlements between PRA and those consumers with which it settles FDCPA claims, is simply inexcusable. Further, PRA's "defense" falls short of even the first element of the defense, that a "bona fide error" was made, since PRA boldly asserts that the dispute by Plaintiff in October, 2014 "was properly handled via policy and procedure". [Plaintiff's Fact No. 64]. As a threshold matter, PRA's asserted defense must fail.

Moreover, if cancellation of the alleged debt was properly handled via policy and procedure, it naturally follows that, where a debt is agreed to be cancelled between PRA and a consumer with an FDCPA claim, this occurrence (here, continued collection of a nonexistent debt 7 months after it was cancelled) will continue to occur, as PRA's policy and procedure allowed it to occur in the first place. In fact, not only is the "defense" not adapted to prevent the violation alleged from occurring, but PRA's polices are adapted to ensure that it does.

PRA's "investigation" process has been shown to be nothing more than the act of rubberstamping its previous decision to continue to cause the alleged debt to be reported on Plaintiff's Experian, Equifax, and TransUnion credit reports. Despite the fact that PRA was fully aware of the fact that the alleged debt was cancelled by agreement between PRA's counsel Hinshaw & Culbertson, LLP and Plaintiff's counsel The Law Office of M. Kris Kasalo, Ltd., **PRA contacted neither Plaintiff's counsel, Hinshaw, its General Counsel, nor Plaintiff as part of its "investigation" of any of Plaintiff's disputes of the alleged debt**. [Plaintiff's Fact No. 44, 51]. This is despite the fact that each of the many ACDVs forwarded to PRA from the credit reporting agencies informed PRA of precisely the manner in which the debt was resolved: "creditor agreed to remove liability for this account". [Plaintiff's Facts Nos. 36, 39]. In light of the landscape which is

PRA's investigation process, it is clear that no system is in place to prevent the violations alleged.

The deposition testimony of PRA's Rule 30(b)(6) deponent, Steve Zahn, speaks volumes as to how insufficient PRA's policies are. As stated above *ad nauseam*, Plaintiff's entire complaint is based upon PRA's continued collection of a debt to February 2015, via credit reporting and letter mailings, that was eliminated in July 2014. [Plaintiff's Facts No. 16, 18, 32], See Exhibit B, Complaint. PRA admits that it received a copy of the operative complaint on or around December 5, 2014. [Plaintiff's Fact No. 66]. Despite receiving a copy of Plaintiff's complaint on December 5, 2014, which is based in great part on the false reporting of the alleged debt and continued collection thereof, PRA did not request that the tradeline associated with the alleged debt be deleted until February 24, 2015—**over two and a half months later**. [Plaintiff's Fact No. 32]. Though PRA may assert that the violations at issue occurred because no Release was executed, it was PRA that insisted that no release be executed—not the Plaintiff's counsel. [Plaintiff's Fact No. 69].

Thus, not even a lawsuit *which is based upon improper credit reporting* seems to be enough to trigger PRA's response to the improper reporting until months after it is given notice of the false reporting. In light of the foregoing, PRA's policies cannot be said to be adapted to prevent the violations asserted, and summary judgment should be granted in Plaintiff's favor on PRA's affirmative defense of "bona fide error".

## X.  PRA VIOLATED THE FCRA BY FAILING TO CONDUCT A REASONABLE INVESTIGATION OF DISPUTED INFORMATION

PRA  violated the FCRA by failing to conduct a reasonable investigation of disputed information, i.e., the request Plaintiff lodged through Equifax, Experian, and TransUnion disputing that the tradeline was accurate. (Complaint ¶ 49-55, Dkt.#1).  Plaintiff proceeds under the FCRA's private right of action for a negligent violation (15 U.S.C. § 1681o), which allows the plaintiff to recover actual damages, as well as the FCRA's private right of action for a willful violation (15

U.S.C. § 1681n), which allows the plaintiff to elect between actual and statutory damages, and also allows for punitive damages. *Matson v. EdFinancial Servs. LLC*, 2015 U.S. Dist. LEXIS 111053 *15-*16 (E.D. Wis. Aug. 21, 2015).

The FCRA imposes a duty on credit reporting agencies to insure the accuracy of a consumer's credit report. This duty exists whenever a credit report is issued, 15 U.S.C. § 1681e(b), and whenever a consumer disputes an item in his or her credit report. 15 U.S.C. § 1681i(a). If a credit reporting agency negligently violates any duty imposed by the statute, a plaintiff may collect "actual damages," costs and fees. 15 U.S.C. § 1681o. If the violation is willful, statutory and punitive damages are available without proof of actual damages. 15 U.S.C. § 1681n. *Id*.

A.  **PRA Willfully Violated Section 1681s-2(b)**

At issue here is the requirement that a "furnisher of information" must "review all relevant information provided by the consumer reporting agency" once the consumer reporting agency disputes the information therein. 15 U.S.C. § 1681s-2(b)(1)(B). The parties cannot dispute that PRA was a "furnisher of information" under the FCRA [Plaintiff's Fact No. 70], and thus it was required to "(1) conduct an investigation with respect to the disputed information; (2) review all relevant information provided to it by the consumer reporting agency; (3) report the results of the investigation to the agency; and (4) if the information is found to be inaccurate or incomplete, report the results to all consumer reporting agencies to which it originally provided the erroneous information." *Westra v. Credit Control of Pinellas,* 409 F.3d 825, 827 (7th Cir. 2005); *Typpi v. PNC Bank*, 2014 U.S. Dist. LEXIS 9746, *30-32, 2014 WL 296035 (N.D. Ill. Jan. 27, 2014).

The Seventh Circuit has noted that "[w]hether a defendant's investigation is reasonable is a factual question normally reserved for trial." *Id*. Moreover, the false information relating to PRA's tradeline (that he owed money to PRA) was provided to multiple creditors that pulled Plaintiff's credit, as evidenced by the various creditors listed on Plaintiff's obtained Plaintiff's TransUnion

21

credit report after July 25, 2014, which included the incorrect tradeline containing false information indicating that Plaintiff owed money to PRA. These included Capital One Bank, USA, N.A., ER Solutions, OneMain Financial, and Chase Bank USA, N.A. [Plaintiff's Fact No. 32].

Plaintiff asserts claims for willful violations of the Fair Credit Reporting Act. Section 1681n provides statutory damages of not less than $100 and not more than $1,000 when violations are willful. "To show willful noncompliance, a plaintiff must show that the defendant 'knowingly and intentionally committed an act in conscious disregard for the rights of others.'" *McKeown v. Sears Roebuck & Co*., 335 F. Supp. 2d, 917, 939 (W.D. Wis. 2004). Willful violations of the Act include "intentional concealments or misrepresentations," id.; accord *Cousin v. Trans Union Corp*., 246 F.3d 359 (5th Cir. 2001) ("Generally, courts have allowed a willful noncompliance claim to proceed where a defendant's conduct involves willful misrepresentations or concealments."); *Stevenson v. TRW Inc*., 987 F.2d 288, 294 (5th Cir. 1993) (observing that early case law awarded punitive damages for acts of concealment and misrepresentation), and reckless violations. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 127 S. Ct. 2201, 2215, 167 L.Ed.2d 1045 (2007) ("[A] company subject to [the Fair Credit Reporting Act] does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless."); see also *Murray v. New Cingular Wireless Servs., Inc*., 523 F.3d 719, 725-26 (7th Cir. 2008); *Matson v. EdFinancial Servs. LLC*, 2015 U.S. Dist. LEXIS 111053, *22-23 (E.D. Wis. Aug. 21, 2015).

It is undisputed that Plaintiff disputed the alleged debt in writing via the reinvestigation process with Experian, TransUnion, and Equifax on October 29, November 7, 2015, and November 11, 2015. [Plaintiff Facts Nos. 35, 38, 41, 45, 46]. It is also beyond dispute that PRA received an ACDV from each credit reporting agency in response to Plaintiff's dispute, which communicated

Plaintiff's position that he was not liable for the alleged debt as the creditor agreed to remove liability for the account, and that PRA's credit reporting of the alleged debt in the amount of $694.51 was incorrect. [Plaintiff Facts Nos. 36,39,42]. In response to each ACDV, PRA falsely verified that the debt was being properly reported. [Plaintiff Facts Nos. 37, 40, 43,47, 48]. **Importantly, PRA knew that the debt was not owed, and that no credit reporting should have occurred, after July 25, 2014—it knew this because it concedes that it entered into an agreement to this effect on July 25, 2014.** [Plaintiff Facts Nos.14-18].

PRA's violation cannot be seen as anything but willful, as it knew that the debt was not owed, yet it nonetheless continued to falsely report the debt and verify the debt as being owed. PRA could not describe any *meaningful* investigation steps during discovery in this case. Specifically, PRA maintains that the dispute by Plaintiff in October, 2014 "was properly handled via policy and procedure" [Plaintiff's Fact No. 64], even though PRA admits that (despite the fact that PRA was fully aware of the fact that the alleged debt was cancelled by agreement between PRA's counsel Hinshaw & Culbertson, LLP and Plaintiff's counsel The Law Office of M. Kris Kasalo, Ltd.) it contacted neither Plaintiff's counsel, its counsel Hinshaw, its General Counsel, nor Plaintiff as part of its "investigation" of any of Plaintiff's disputes of the alleged debt. [Plaintiff's Fact No. 44, 51]. This is despite the fact that each of the many ACDVs forwarded to PRA from the credit reporting agencies informed PRA of precisely the manner in which the debt was resolved: "**creditor agreed to remove liability for this account**". [Plaintiff's Facts Nos. 34, 37]. Moreover, PRA has no written policies in place that detail the steps that should be taken in a reinvestigation. [Plaintiff's Facts No. 65]. PRA did not, in response to any of Plaintiff's disputes indicating that he does not owe the alleged debt, that it is being reported incorrectly, or that the debt has been cancelled, request from Plaintiff or his counsel, any further documentation or information to aid in its investigation of Plaintiff's disputes. [Plaintiff's Fact No. 50]. In light of the landscape which is PRA's investigation

23

process, it is clear that no system is in place to prevent the violations alleged. In fact, PRA went so far as to close the investigation in response to Plaintiff's October 29, 2014 dispute—in favor of PRA— without contacting any attorney or party in this case. [Plaintiff's Facts Nos. 56]. In light of the foregoing facts, PRA's violations cannot be seen as anything but willful, and summary judgment should be entered in favor of Plaintiff on liability on this claim for statutory and punitive damages.

### B.     PRA Negligently Violated  Section 1681s-2(b)

In the alternative, Plaintiff negligently violated section 1681s-2(b). Plaintiff has plead actual damages in support. See Complaint, Dkt. #1, pages 8-11). Plaintiff incorporates by reference facts asserted in Para. X.A.

## CONCLUSION

WHEREFORE, as there are no genuine issue of material fact regarding any element of Plaintiff's claim based on a violation of any of the FDCPA or FCRA provisions cited above, summary judgment should be granted to Plaintiff accordingly on said claims, and against Defendant's asserted defense of bona fide error.


**The Law Office of M. Kris Kasalo, Ltd.**          **By: /s/M. Kris Kasalo_____**
20 North Clark Street, Suite 3100
Chicago, Illinois 60602
tele 312.726.6160
fax 312.698.5054
mario.kasalo@kasalolaw.com

## <u>CERTIFICATE OF SERVICE</u>

I, <u>Mario Kris Kasalo</u>, an attorney, certify that I shall cause to be served a copy of the foregoing document in this case that will be served via the method stated below, upon the following, on December 14, 2015:

| | | |
|---|---|---|
| _X_ | CM/ECF | *Attorney(s) for Defendant(s)* |
| ____ | Facsimile | David Schultz |
| ____ | Federal Express | Lindsey Conley |
| ____ | UPS | Avanti Bakane |
| ____ | Mail | Hinshaw & Culbertson LLP |
| ____ | Messenger | 222 N LaSalle St, Suite 300 |
| ____ | Email | Chicago, IL 60601 |
| ____ | USPS Mail | |