# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| ISAAC PAZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 14 C 9751 |
| v. | ) | |
| | ) | Judge Jorge L. Alonso |
| PORTFOLIO RECOVERY ASSOCIATES, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff sues defendant for its alleged violations of the Fair Debt Collection Practices Act ("FDCPA") and the Fair Credit Reporting Act ("FCRA"). The case is before the Court on the parties' cross-motions for summary judgment. For the reasons set forth below, plaintiff's motion is denied and defendant's motion is granted in part and denied in part.

## Facts

Plaintiff defaulted on a $694.51 credit card debt to Chase Bank. (Def.'s LR 56.1(b)(3)(B) Stmt. ¶ 7.) Defendant, which is a debt collector, bought the debt from Chase on May 24, 2011, after plaintiff had defaulted. (*Id.* ¶¶ 4, 9.)

In June 2014, plaintiff sued defendant, alleging that it had violated the FDCPA by failing to tell credit reporting agencies that plaintiff disputed the Chase debt. *See* Compl., *Paz v. Portfolio Recovery Services*, Inc., 14 C 4449 (N.D. Ill.) ("*Paz I*").

On July 25, 2014, defense counsel made the following offer to plaintiff's counsel to settle *Paz I*: "$4500 to settle fees and costs. [Defendant] will eliminate the debt and agree to request

tradeline[1] deletion, as well as pay the damages offered to your client ($1,001)."  (Def.'s LR 56.1(b)(3)(B) Stmt. ¶ 14.)  Plaintiff accepted the offer the same day.  (*Id.* ¶ 15.)  Pursuant to the settlement agreement, defendant should not have communicated information about the Chase debt to any credit reporting agency after July 25, 2014.  (*Id.* ¶ 17.)

In August, September, October, and November 2014, defendant told the Equifax, Experian, and TransUnion credit reporting agencies that plaintiff owed a balance on the Chase debt.  (*Id.* ¶¶ 19-28.)

In October 2014, plaintiff disputed the Chase debt with Experian, Equifax, and TransUnion, each of which communicated the dispute to defendant via an ACDV [Automated Consumer Dispute Verification].  (*Id.* ¶¶ 35, 38, 41.)  The reasons given for the dispute on the ACDVs was that the creditor agreed to remove liability for the account or the customer was not liable for the account.  (*Id.* ¶¶ 36, 39, 42.)  After reviewing the information in its notes, defendant told the credit reporting agencies that plaintiff still owed the debt.  (*Id.* ¶¶ 37, 40, 43; *see* Pl.'s Ex. E, Jackson Dep. at 70-86.)

On November 7 and 11, 2014, plaintiff again disputed the debt with Experian, Equifax and TransUnion, and each credit agency sent defendant an ACDV advising that plaintiff disputed the debt. (Def.'s LR 56.1(b)(3)(B) Stmt. ¶¶ 45-48.)  Having investigated the same dispute in connection with the October ACDV, defendant did not conduct an investigation in response to the November ACDVs.  (*Id.* ¶ 49; Pl.'s Ex. E, Jackson Dep. at 149.)

---

[1]Experian's website states that "'[t]radeline' is industry jargon for 'account.'"  *See* https://www.experian.com/ask-experian/20080806-tradelines-and-your-credit-report.html.

On November 7 and 11, 2014, defendant sent letters to plaintiff's counsel saying that defendant had finished its investigation of plaintiff's dispute and concluded that there was a current balance of $694.51 on the Chase debt. (*Id.* ¶¶ 54-57, 60-61.)

Defendant did not ask the credit reporting agencies to delete the tradeline associated with the Chase debt until February 24, 2015. (*Id.* ¶ 32.)

**Discussion**

To prevail on a summary judgment motion, "the movant [must] show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At this stage, we do not weigh evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the non-moving party. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Id.*

In Count I, plaintiff alleges that defendant violated §§ 1692e and 1692f of the FDCPA. Among other things, those sections prohibit a debt collector from "us[ing] unfair or unconscionable means" or "any false, deceptive, or misleading representation or means in connection with the collection of any debt," defined as "any obligation . . . of a consumer to pay money arising out of a transaction . . . primarily for personal, family, or household purposes," including: (1) falsely representing "the character, amount, or legal status of any debt"; (2) "threat[ening] to take any action that cannot legally be taken"; (3) "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false"; or (4) "us[ing] . . . any

3

false representation or deceptive means to collect or attempt to collect any debt." §§ 1692a(5), 1692e(2)(A), (5), (8), (10), 1692f.

Defendant contends that there is no evidence that the Chase debt is a "debt" as the statute defines it because plaintiff offers only his own testimony as support for that fact. (*See* Def.'s LR 56.1(b)(3)(B) Stmt. ¶ 8; Pl.'s Ex. A, Paz Decl. ¶ 6 (attesting that the Chase debt "was incurred as a result of purchases [plaintiff] made for personal, family, and household goods").) However, plaintiff's testimony *is* evidence, *see Payne v. Pauley*, 337 F.3d 767, 771-73 (7th Cir. 2003), and defendant offers nothing to contradict it. Thus, the record establishes that the Chase debt was a "debt" within the meaning of the FDCPA.

Defendant also argues that the letters it sent to plaintiff's counsel in November were not "in connection with the collection of any debt," as required by the FDCPA, because they do not "contain[] a demand for payment," as the Seventh Circuit requires. (Def.'s Resp. Pl.'s Mot. Summ. J. & Cross-Mot. Summ. J. at 13.) However, the case defendant cites, *Bailey v. Security National Servicing Corp.*, 154 F.3d 384 (7th Cir. 1998), does not hold that a demand for payment is the sine qua non of a communication in connection with the collection of a debt. Rather, the *Bailey* court held that a letter that did not ask for payment of an existing debt but told plaintiffs about due dates for future payments under a forbearance agreement did not constitute a communication in connection with the collection of a debt. *Id.* at 388-389; *see Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 384-85 (7th Cir. 2010) (stating that *Bailey* "does not . . . establish a categorical rule that only an explicit demand for payment will qualify as a communication made in connection with the collection of a debt"). Moreover, the November 7 letter does contain a demand for payment, the November 14 letter explicitly states that it is seeking to collect a debt, and defendant admitted both

4

letters were sent in connection with the collection of a debt. (*See* Pl.'s Ex. F at PRA0216, 11/7/14 Letter from Def. to Kasalo ("If you do not pay the debt, we may report it to the credit reporting agencies as unpaid."); *id.* at PRA0236, 11/14/14 Letter from Def. to Kasalo ("This communication . . . is an attempt to collect a debt."); Def.'s LR 56.1(b)(3)(B) Stmt. ¶¶ 57, 61.) Accordingly, the record establishes that the letters were communications in connection with the collection of a debt.

Next, defendant argues that the letters did not violate the statute because they were sent to plaintiff's counsel, who was not likely to be deceived or misled by them. The Seventh Circuit has held that the FDCPA applies to debt collectors' communications with counsel, and that such communications violate the statute if they are "[]likely to deceive a competent lawyer." *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 773-75 (7th Cir. 2007); *see Bravo v. Midland Credit Mgmt., Inc.*, 812 F.3d 599, 603 (7th Cir. 2016) ("The *Evory* court held the 'competent attorney' standard applies regardless of whether a statement is false, misleading or deceptive.").

Plaintiff says the following statement from the November 7 letter is misleading or false: "If you do not pay the debt, we may report it to the credit reporting agencies as unpaid." (Pl.'s Ex. F at PRA0216, 11/7/14 Letter from Def. to Kasalo.) It is undisputed, however, that the recipient of this letter was the same lawyer who had settled *Paz I* on plaintiff's behalf. (*See id.*; Def.'s LR 56.1(b)(3)(B) Stmt. ¶ 14.) Thus, counsel knew when he received the letter that plaintiff did not owe defendant a debt and that defendant had no basis for telling the credit reporting agencies otherwise.

The situation here is much like that in *Bravo v. Midland Credit Management, Inc.*, 812 F.3d 599 (7th Cir. 2016). As in this case, plaintiff's counsel in *Bravo* received two letters from defendant seeking payment of debts that were supposed to have been discharged pursuant to the parties' settlement of a prior lawsuit. *Id.* at 601. After her counsel received the letters, the plaintiff in *Bravo*

5

sued the debt collector, claiming that the letters were false or misleading in violation of the FDCPA. *Id.* The Seventh Circuit rejected the claim:

> This case involves alleged false representations to a debtor's attorney. Therefore, the standard is whether a competent attorney, even if he is not a specialist in consumer debt law, would be deceived by two letters requesting payment for debts resolved in a settlement. On the facts before us, we believe a competent attorney would be able to determine whether his client continued to owe a debt after it was settled in full and would therefore not be deceived by the two letters.

*Id.* at 603. As in *Bravo*, counsel here would have known when he received the letters that his client did not owe the Chase debt and thus would not have been deceived by them. Defendant is therefore entitled to judgment as a matter of law on plaintiff's claim that the November 7 letter violated the FDCPA.

*Bravo* dooms plaintiff's claim as to the November 14 letter as well. That letter, which responds to the disputes plaintiff lodged with the credit reporting agencies, states:

> Please be advised we have reviewed your clients' dispute and our records indicate we have already responded to a previous dispute substantially the same as your client's present dispute. Because your client's dispute alleges no new facts and includes no new information in which to form the basis for a new investigation, we will not be conducting another investigation into the dispute . . . .
>
> If we continue to receive subsequent correspondence from your client regarding a dispute that has already been resolved, we will consider your inquiry answered. No further replies will be forthcoming unless you provide the information we need to assist your client. Our office considers this mater closed.

(Pl.'s Ex. F at PRA0236.) Given counsel's knowledge of the settlement, there is nothing in this letter that would lead a reasonable lawyer to believe that plaintiff still owed the Chase debt. Accordingly, the Court grants defendant's motion for summary judgment on the FDCPA claim based on the November 14 letter.

That leaves defendant's post-settlement reports to the three credit reporting agencies that plaintiff owed the Chase debt. There is no dispute that defendant told Equifax, Experian, and TransUnion on multiple occasions after it agreed to discharge the Chase debt that plaintiff still owed it. (Def.'s LR 56.1(a)(3)(B) Stmt. ¶¶ 19-28.) Defendant contends, however, that the undisputed facts show that it neither knew nor should have known that the information it was giving was wrong. The Court disagrees. It is undisputed that: (1) on July 25, 2014, defendant agreed to "eliminate the [Chase] debt and . . . request tradeline deletion"; (2) in August, September, October, and November 2014, defendant told Equifax, Experian, and TransUnion that plaintiff owed a balance on the Chase debt; (3) in October and November, plaintiff disputed the debt with the agencies, which prompted them to send ACDVs to defendant that said plaintiff claimed he no longer owed the debt; (4) defendant's investigation of the October ACDVs did not uncover the settlement; and (5) defendant did not investigate the November ACDV. (Def.'s LR 56.1(b)(3)(B) Stmt. ¶¶ 14, 19-28, 35-49.) In short, the record establishes that defendant should have known that the reports it gave the credit agencies after the settlement of *Paz I* were false.

Even if that is true, defendant contends that it is entitled to the bona fide error defense set forth in § 1692k(c). *See id.* ("A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."). "A defendant is entitled to invoke the FDCPA's bona fide error defense only if it can show that the violation: (1) was unintentional, (2) resulted from a bona fide error, and (3) occurred despite the debt collector's maintenance of procedures reasonably

adapted to avoid such error." *Ruth v. Triumph P'ships*, 577 F.3d 790, 803 (7th Cir. 2009). Plaintiff contends that proof of the third element is lacking.

Viewed favorably to defendant, the record shows that, when it agrees to waive an account balance, it relies on its General Counsel's Office to close the account. (Def.'s LR 56.1(b)(3)(C) Stmt. ¶¶ 23-27.) The record contains no evidence about the procedures the General Counsel's Office uses to ensure that an account gets closed, but it suggests that those procedures have generally been effective, as defendant testified that it was not sure it had "ever [before] been sued for failing to delete a tradeline." (Pl.'s Ex. D, Def.'s 30(b)(6) Dep. at 24.) This evidence does not establish that defendants' procedures are "reasonably adapted to avoid" the error that occurred here, but it is sufficient to raise a triable issue of fact on this issue. *Ruth*, 577 F.3d at 803. Accordingly, the Court denies both parties' motions for summary judgment on the post-*Paz I*-settlement FDCPA claims.

In Count II, plaintiff alleges that defendant violated § 1681s-2b of the FCRA by negligently or willfully failing to conduct a reasonable investigation of the disputes plaintiff lodged with the credit reporting agencies. That statute requires defendant, upon notification of a dispute, to: "(1) conduct a[] [reasonable] investigation with respect to the disputed information; (2) review all relevant information provided to it by the consumer reporting agency; (3) report the results of the investigation to the agency; and (4) if the information is found to be inaccurate or incomplete, report the results to all consumer reporting agencies to which it originally provided the erroneous information." *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005). If defendant willfully violated the statute, *i.e.*, acted knowingly or with reckless disregard for its statutory obligations, *see Safeco Insurance Company of America v. GEICO*, 551 U.S. 47, 57-59 (2007), it is

8

liable to plaintiff for actual damages or statutory damages "of not less than $100 and not more than $1,000." 15 U.S.C. § 1681n(a)(1)(A). If defendant negligently violated the statute, it is liable to plaintiff for "any actual damages [he] sustained." 15 U.S.C. § 1681o(a)(1).

Defendant testified that it has policies and procedures for responding to an ACDV and for closing an account as a result of litigation. (*See* Pl.'s Ex. E, Jackson Dep. at 29-35, 52-53, 56, 70-77, 114-17, 124-25; Def.'s LR 56.1(b)(3)(C) Stmt. ¶¶ 23-27.) Whether those procedures are reasonable is an issue for trial. *Westra*, 409 F.3d at 827 ("Whether a defendant's investigation is reasonable is a factual question normally reserved for trial[]."). What is clear, however, is that any violation of the FCRA was not willful. (*See* Pl.'s Ex. E, Jackson Dep. at 29-35, 52-53, 56, 70-76, 82, 85-86, 124-25.) Thus, defendant is entitled to judgment as a matter of law on plaintiff's claim that it willfully violated the FCRA claim.

Defendant contends that it is also entitled to judgment on any negligence-based FRCA claim because plaintiff offers no evidence that he suffered actual damages, the only kind of damages recoverable, as a result of any statutory violation. With respect to damages, plaintiff asserts that he "suffered emotional distress . . . including . . . feeling helplessness, confusion, anxiety, feeling 'sick to [his] stomach,' nervousness, inability to sleep, worry and fear of losing his job due to the . . . tradeline, and stomach tightness." (Pl.'s LR 56.1(a) Stmt. ¶ 63.) That testimony is sufficient under Seventh Circuit case law to raise an issue of fact as to actual damages. *See Ruffin-Thompkins v. Experian Info. Sols., Inc.*, 422 F.3d 603, 609 (7th Cir. 2005) ("We require that when the injured party's own testimony is the only proof of emotional damages, []he must explain the circumstances of [his] injury in reasonable detail; []he cannot rely on mere conclusory statements.") (quotations

9

omitted). Accordingly, defendant's motion for summary on the negligence-based FRCA claim is denied.

**Conclusion**

For the reasons set forth above, the Court denies plaintiff's motion for summary judgment [81] and grants in part and denies in part defendant's motion for summary judgment [65]. Defendant's motion is granted as to the FDCPA claims based on the November 7 and 14 letters and the willfulness-based FCRA claim. The motion is denied as to the FDCPA claims based on defendant's reporting of the Chase debt after the settlement of *Paz I* and the negligence-based FRCA claim. The case is set for a status hearing on May 10, 2016 at 9:30 a.m. at which time the Court will set a trial date.

**SO ORDERED.**                                  **ENTERED:  April 14, 2016**

_____
**HON.  JORGE L. ALONSO**
**United States District Judge**