IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ISAAC PAZ, | ) |
| Plaintiff, | ) Case No. 1:14-cv-09751 |
| v. | ) Judge: Jorge L. Alonso |
| PORTFOLIO RECOVERY ASSOCIATES, LLC, | ) |
| Defendant. | ) |

**DEFENDANT PORTFOLIO RECOVERY ASSOCIATES, LLC'S RESPONSE TO PLAINTIFF'S PETITION FOR ATTORNEYS' FEES**

David M. Schultz
Jennifer W. Weller
Raven Burke Mackey
Hinshaw & Culbertson LLP
222 North LaSalle Street, Suite 300
Chicago, IL 60601-1081
Telephone: 312-704-3000
Facsimile: 312-704-3001

## I. INTRODUCTION

Rather than providing PRA with a demand two years ago, Plaintiff chose to litigate this case, ultimately recovering a jury verdict for less than each of Defendant's three successive offers of judgment. Plaintiff's conduct was not reasonable and he should not be rewarded for failing to attempt to settle his second individual FDCPA case against PRA. His conduct is also incomprehensible. After all, he accepted an identical offer of judgment of a lesser amount in *Paz v. Portfolio Recovery Services, Inc.*, 14 C 4449 (N.D.Ill.)("Paz I"). The parties swiftly resolved Paz I resulting in a judgment and satisfaction of judgment a mere 84 days after the case was filed. This case stems from the settlement in Paz I in which PRA agreed to delete Plaintiff's Chase credit card debt from his credit report but failed to delete it in accordance with the parties' agreement. Plaintiff and his counsel did not call PRA's in house or outside counsel (both of whom Mr. Kasalo regularly communicated with) to advise them that the debt had not been deleted as agreed. Instead, this suit followed and no demand was made.

This Court should exercise its discretion and award Plaintiff's counsel only those fees that were reasonably incurred through the time period provided in any one of PRA's offers of judgment. In the alternative, if the Court finds that Plaintiff's counsel is entitled to fees incurred after the offers, the Court should make substantial reductions to the fees based on each of the objections raised by PRA to specific time entries and further reduce the lodestar taking into account the degree of success obtained and proportionality of the fees to the Plaintiff's recovery.

## II. PROCEDURAL HISTORY

Plaintiff defaulted on a Chase credit card debt and PRA bought the debt from Chase. In June 2014, Plaintiff sued PRA, alleging that it had violated the FDCPA by failing to tell credit reporting agencies that Plaintiff disputed the Chase debt. On July 1, 2014 PRA served Plaintiff with a Rule 68 Offer which offered judgment in the amount of $1,001 for Plaintiff's claims alleged in the

complaint and reasonable attorneys' fees and costs through the date of Plaintiff's acceptance of the Offer, in an amount agreed upon between the parties, and if no agreement could be made, to be determined by the Court.[1] On July 11, 2014, Plaintiff filed a Notice of Acceptance of Defendant's Offer of Judgment. (Ex. A hereto). On July 14, 2014 counsel for Defendant, Avanti Bakane, sent an email to counsel for Plaintiff, Mario Kasalo stating: "We received notice of Plaintiff's acceptance of OOJ. If your fee demand is reasonable, we may be able to settle this amount. As the case is in its early stages, it should be. Let us know." On July 22, 2014 Ms. Bakane sent a second email to Mr. Kasalo asking for a response to the July 14, 2014 email. Mr. Kasalo responded that day demanding $5200 in attorneys' fees and requesting that the debt be retired and the tradeline deleted.

On July 25, 2014, defense counsel offered: "$4500 to settle fees and costs. [Defendant] will eliminate the debt and agree to request tradeline deletion, as well as pay the damages offered to your client ($1,001)." Plaintiff accepted the offer the same day – 24 days after the Offer of Judgment was made. *Id.* (A copy of the referenced emails is attached hereto as Ex. B).

As the result of a clerical error closing the Paz I file, PRA continued reporting its information as to Paz's debt to the three credit bureaus after July 25, 2014, until February 2015. In response, Paz communicated disputes to the three credit bureaus, which the credit bureaus then forwarded to PRA. PRA mailed two letters regarding its response to the communications from the credit bureaus to Mr. Kasalo, on November 7 and 14, 2014. ( See Dkt #186, Appendix B). Unaware that PRA's General Counsel had resolved this matter, PRA's Disputes Department informed all three credit reporting agencies, in response to each dispute, that the debt was still owed. Paz then filed this lawsuit on December 5, 2014, and it was served January 6, 2015. (Dkt #1, "Paz II").

---

[1] The offer also stated that it was "made solely for the purposes specified in Rule 68 of the Federal Rules of Civil Procedure and is not to be construed as an admission that Defendant is liable in this action, that Plaintiff has suffered any damage, or for any other reason" and that if it was not accepted, "it shall be deemed withdrawn and evidence thereof shall not be admissible except in the proceeding to determine costs." This language does not invalidate the offer. *See Mite v. Falstaff Brewing Corp.*, 106 F.R.D. 434 (N.D. Ill. 1985)

**PRA's Early Efforts to Settle Paz II**

On January 27, 2015 Defendant's counsel, Lindsey Conley sent Mr. Kasalo an email stating, "While we review this case, would you please forward us a demand for this matter?"(Ex. C hereto). Mr. Kasalo's billing records reflect that he received the email on January 27, 2015, however, he never responded to Ms. Conley. *See* Dkt #207-1 at p.30 (Mario Kasalo 1/27/2015 entry stating "received email from oc L Conley re: settlement."). When no response was received to Ms. Conley's email, and in an effort to settle the case, Defendant served Plaintiff with its First Offer on January 28, 2015. The First Offer was made one month prior to Defendant's answer and was identical to the offer accepted in Paz I, except that Defendant offered Paz $1500 instead of $1001 for the claims in the complaint. (Ex D hereto). Plaintiff did not respond to the First Offer.

In connection with the reassignment of the case to Judge Alonso, the parties were ordered to file a status report including reporting the status of settlement[2] (Dkt #12). Rather than discuss a prompt resolution of the case, however, Plaintiff did nothing in response to the settlement overtures. In the Joint Status Report, (Dkt #13), the parties reported that only Defendant made an effort to promptly resolve the case advising: "Defendant has requested a settlement demand from Plaintiff. Plaintiff has not yet provided a demand" and "Defendant served an Offer of Judgment on January 28, 2015. Plaintiff has not responded to the offer. (Dkt #13, Par. IV)

On February 26, 2015 Defendant made Plaintiff a second offer of judgment in Paz II, increasing the amount to $2500 to Plaintiff "arising from Plaintiff's claims against Defendant as alleged in Plaintiff's complaint." (Ex. E hereto("Second Offer")). After the Second Offer was not accepted Defendant made a third offer of judgment to Plaintiff on March 27, 2015. (Ex F hereto ("Third Offer")). The Third Offer was identical in all respects to the First and Second Offers except

---

[2] Moreover, this Court's standing order provides: "At least 14 days before the initial status hearing, the parties shall meet to discuss the nature and basis of their claims and defenses, the possibilities for a prompt settlement or resolution of the case, and the arrangements for making Rule 26(a)(1) disclosures."

3

that it increased the amount to Plaintiff to $3501.00 for "Plaintiff's claims against Defendant as alleged in Plaintiff's complaint." Paz did not accept, respond or communicate with Defendant's counsel about any of these offers of judgment nor did he make a demand.

### The Majority of Plaintiff's Claims were Unsuccessful

In his complaint Plaintiff brought claims under the FDCPA based on PRA's November 7, and 14, 2014 letters and claim that PRA reported the Chase debt to the credit reporting agencies after the settlement of Paz I. (Dkt #1). He sought statutory and actual damages for the FDCPA violations. (Dkt #1, Count I, prayer for relief). He contended that PRA violated Section 1692e, 1692e(2), 1692e(5), 1692e(10) and 1692f(1)(Compl., Dkt#1, ¶¶45-47). At summary judgment he additionally argued PRA violated Section 1692e(8). (Dkt #65-1).

Plaintiff also claimed that PRA negligently and willfully violated the FCRA and sought statutory damages, actual damages and punitive damages. (Dkt #1, Count II, prayer for relief). After Plaintiff unsuccessfully moved to amend the complaint and add class claims, the parties completed discovery and briefed summary judgment. Plaintiff moved for summary judgment on liability. The Court denied Plaintiff's motion for summary judgment and granted Defendant's motion on Plaintiff's FDCPA claims based on the November 7 and 14 letters and the willfulness-based FCRA claim. As to the November 7 letter, the Court noted that while Plaintiff claimed the letter was misleading, it was undisputed that "the recipient of this letter was the same lawyer who had settled Paz I on plaintiff's behalf. Thus, counsel knew when he received the letter that plaintiff did not owe defendant a debt and that defendant had no basis for telling the credit reporting agencies otherwise." Dkt #99, p. 5 (internal citations omitted). The Court similarly granted summary judgment on Plaintiff's FDCPA claim based on the November 14, 2015 letter. (Dkt #99, pp.5-6). The only FDCPA claim which survived summary judgment was the Section 1692e(8) claim.

4

While the Court found that there was a question of fact as to whether Defendant had reasonable policies and procedures for responding to an ACDV and for closing an account as a result of litigation, the Court found that it was clear that any violation of the FCRA was not willful. (Dkt #99, p.9). The case went to the jury only on Plaintiff's Section 1692e(8) claim based on the reporting of the Chase debt after the settlement of Paz I and the negligence-based FRCA claim.

Plaintiff moved for reconsideration of the Court's summary judgment ruling which included arguments that the Court characterized as "nonsensical." Dkt #137, p.5 ("It would be nonsensical to grant summary judgment in favor of plaintiff as to liability of § 1692e(8) when the issue of whether the liability shield applies has yet to be determined."). The motion was denied.

At trial, Plaintiff asked for statutory damages in the amount of $1,000.00 for the FDCPA claims and actual damages for the FDCPA and FCRA claims. After deliberating for approximately 45 minutes, the jury awarded Plaintiff $1000 on the FDCPA claim and found that Plaintiff was entitled to $0 in actual damages on both the FDCPA and FCRA claims. Plaintiff used a trial team of 3 attorneys and a paralegal for a 2-day jury trial to obtain a result that was a quarter of Defendant's maximum offer of judgment and a fraction of the damages requested at trial.[3]

### III. ARGUMENT

Plaintiffs who prevail under the FDCPA are entitled to an award of costs and reasonable attorney's fees. *Schlacher v. Law Offices of Phillip J. Rotche & Assocs., P.C.*, 574 F.3d 852, 856. Fees are determined by the number of reasonable hours multiplied by a reasonable hourly rate. *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983). The onus is on the plaintiff, as the party seeking the award, to provide adequate evidence of the hours worked and the rate claimed. *Id.* at 433.[4] Before applying

---

[3] Defendant will order the transcript of the closing argument to provide the Court with the exact figure requested by Plaintiff at trial.

[4] Various factors have been held relevant to the setting of appropriate attorney's fees, including: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal

5

this analysis, however, the court should determine which fees to include in the lodestar calculation. As a threshold matter, this Court should not award fees billed after PRA's offers of judgment.

### A. No Fees Should Be Awarded For Litigation after PRA's Offers of Judgment

It is undisputed that Plaintiff recovered less at trial than the amounts offered by Defendant over 1 ½ years prior to trial. *See* Exs D-F (offering $1500, $2500 and $3501 respectively). Each offer provided Paz with an offer of full recovery because each offer exceeded the $1000 he ultimately recovered and offered reasonable attorneys' fees and costs through the date of Plaintiff's acceptance of the Offer, in an amount agreed upon between the parties, and if no agreement could be made, to be determined by the Court. In the face of such offers, it was not reasonable to litigate further. Any supposedly experienced FDCPA plaintiff's lawyer should have known the significant risk faced in trying to recover more than those generous offers. It also surely was not reasonable to decline to make a demand.

Plaintiff may argue that the offers did not provide full relief because they did not offer "fees on fees." Plaintiff is incorrect. Only if the parties could not reach an agreement would Plaintiff's counsel be required to file a fee petition. In such case the Court would then determine the fees.[5]

In fact, Paz accepted an identically worded offer of judgment in Paz I (except that the amount offered on the claims in the complaint was $1001), and, as contemplated by the rules, the parties conferred to determine whether they could reach an agreement on the fees. The parties reached an agreement on the fees within three days. *See* Ex B. Plaintiff's counsel has been attorney

---

service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Hensley,* 461 U.S. at 430 n. 3

[5] The language of the offers is consistent with Local Rule 54.3 which requires that the parties confer and attempt in good faith to agree on the amount of fees or related nontaxable expenses that should be awarded prior to filing a fee motion.

of record in at least three other cases involving similarly-worded offers of judgment. *See Cox v. Blitt and Gaines, P.C.*, Case No. 1:10-cv-00563 (N.D.Ill.)(Plaintiff accepted offer of $1001.00 plus courts costs together with reasonable attorney fees incurred as of the date of acceptance of this offer); *Terihaj v. Nationwide Credit Inc.*, Case No. 1:09cv-04865 (N.D.Ill)(Plaintiff accepted offer of $1500.00 plus reasonable attorneys' fees and costs to date); *Kasalo v. Trident Asset Management LLC and OPS 10 LLC*, Case No. 1:12-cv-2900 (N.D.Ill)(Plaintiff accepted offer of $1000.00 in statutory damages plus "all attorney's fees and costs allowable under 15 U.S.C. §1692k(a) through and including the 14th day following the service of this Offer. Plaintiff shall make a good faith effort to reach agreement on the amount of the attorney's fees before filing a motion under this paragraph.")(The offers are attached as Ex. G). Mr. Kasalo has also been an attorney of record in over a dozen other cases in which offers of judgment were made and accepted and the parties thereafter resolved attorney's fees without resorting to fee petitions. *See e.g. Ali v. Portfolio Recovery Associates, LLC.*, Case No. 1:16-cv-02352 (N.D.Ill.), Dkt #25 (fees were settled for $5000); *Washington v. Portfolio Recovery Associates, LLC, et. al.*, Case No. 1:14-cv-4444 (N.D.Ill.), Dkts #22, 29 (fees were settled for $4400); *Woodward v. Miramed Revenue Group, LLC*, Case No. 1:13-cv-4073 (N.D.Ill)(fees were settled by agreement of the parties); *Hernandez v. Midland Funding, LLC, et. al.*, Case No. 1:14-cv-3272 (N.D.Ill)(same); *Gerke v. Midland Funding, LLC., et. al.,* Case No. 1:14-cv-4446 (N.D.Ill.)(same); *Decatur v. Midland Funding, LLC, et. al.*, Case No. 1:14-cv-04898 (N.D.Ill.)((same).

While Plaintiff extensively cites *Kasalo v. Trident Asset Mgmt., LLC*, No. 12 C 2900, 2015 WL 2097605, at *1 (N.D. Ill. May 3, 2015)(Dkt #207, pp.3,5,7-8), the conduct of Plaintiff's counsel in that case is in stark contrast to his conduct in this case. For instance, in *Kasalo*, prior to the initial scheduling conference and pursuant to Judge Kennelly's instruction to exchange settlement proposals, the plaintiff made a settlement demand of $5,000, (including $4,000 in attorney's fees and expenses). The court questioned why defendant had not accepted plaintiff's initial $5000 demand,

stating, "Given the foreseeable cost of litigating the case through to its conclusion, one might question why the defendants did not make a higher offer and indeed why they did not accept plaintiff's initial demand of $5,000 or even his later demand of $5,500." *Id.* at *2.

In this case Plaintiff's counsel made no early efforts to settle even though Defendant asked for a demand just *three weeks* after having been served with the Complaint. *See* Ex. C. Defendant's January 28, 2015 First Offer similarly met with no response. Instead after receiving the offer via email at approximately 1:27 PM, (Ex. D), Plaintiff's counsel's billing records reflect that he spent **8.1 hours** that same day researching the offer for a total of $3,037.50.[6] (Dkt #207-1, pp.30-31)

Plaintiff's failure to engage in settlement discussions with Defendant is inexplicable and the conduct is not reasonable. Moreover, if Plaintiff's counsel had concerns over the terms of any of Defendant's offers, he had ample time to raise those concerns. Rule 68(a) provides that an opposing party has 14 days after being served with an offer of judgment to accept it. Instead, Plaintiff's counsel billed over $3000 in attorneys' fees on the same date he received Defendant's 4-paragraph, 1-page First Offer.[7] Mr. Kasalo's billing records also reflect that he billed another $300 for receiving reviewing the Second Offer and $150 for reviewing and analyzing the Third Offer.

Yet he never responded to these offers. Instead of resolving the case promptly as encouraged by this Court's standing order, Plaintiff instead embarked on two years of litigation that could have been avoided altogether. PRA made a mistake in failing to delete the account from Paz's credit report- a mistake that could have easily been rectified if Plaintiff's counsel contacted PRA's in house or outside counsel (both of whom he was in regular contact, as the testimony of Mr. Zahn

---

[6] These entries seem peculiar. Since he did not receive the offer until at least 1:27 PM on January 28, 2015 and spent 8.1 hours that day researching the offer, he did almost nothing else the remainder of that afternoon and evening.
[7] The reasonableness of these fees is also addressed in Section B(1).

8

confirmed during the trial). Plaintiff's strategy in filing and then needlessly prolonging this litigation resulting in fees and costs of 190 times the jury award should not be rewarded.

In contrast to the $187,410.00 attorney's fee award sought, at the time the First Offer was made, Plaintiff's counsel's bills reflect that he had billed $5,362.50 in fees. (Dkt #207-1). This amount is consistent with what Plaintiff claimed in fees in Paz I ($5200) and ultimately settled for in fees ($4500). It is also consistent with settlements Plaintiff's counsel reached on fees in other cases after the plaintiffs in those cases accepted offers of judgment. *Ali v. Portfolio Recovery Associates, LLC.*, Case No. 1:16-cv-02352 (N.D.Ill.), Dkt #25 (fees were settled for $5000); *Washington v. Portfolio Recovery Associates, LLC, et. al.*, Case No. 1:14-cv-4444 (N.D.Ill.), Dkts #22, 29 (fees were settled for $4400). Moreover it is consistent with the demands made in *Kasalo* of $5000 and $5500. *Kasalo*, 2015 WL 2097605, at *2. At the time the February 26, 2015 Second Offer was made Plaintiff's counsel had billed $10,425 in fees and as of the March 27, 2015 Third Offer had billed $10,725 in fees. Had Plaintiff's counsel made any effort to resolve the case within the first 90 days, the parties would almost certainly have been able to reach an agreement.

Attorney's fees accumulated after a party rejects a substantial offer provide minimal benefit to the prevailing party, and thus a reasonable attorney's fee may be less than the lodestar calculation. *Moriarty v. Svec*, 233 F.3d 955, 967 (7th Cir. 2000). Determining whether an offer is substantial is left in the first instance to the discretion of the district court. *Id.* Nevertheless, an offer is substantial if, as in this case, the offered amount appears to be roughly equal to or more than the total damages recovered by the prevailing party. In such circumstances, a district court should reflect on whether to award only a percentage (including zero percent) of the attorney's fees that were incurred after the date of the settlement offer. *Id*, *see also Gilfand v. Planey, No.* 07 C 2566, 2012 WL 5845530, at *16 (N.D. Ill. Nov. 19, 2012). The Court should exercise its considerable discretion and award Plaintiff's counsel no fees after Defendant's offers were made.

### B. The Lodestar is not Reasonable

If the Court finds that Plaintiff's counsel is entitled to attorneys' fees after Defendants' offers of judgment, the amount sought in the fee petition should be substantially reduced because (1) the billing records indicate substantial inefficiency and duplication of efforts on a straightforward case, (2) Plaintiff achieved limited success and (3) Plaintiff's request for fees and costs equal to 190 times the verdict is unreasonable. Plaintiff's counsel must exercise "billing judgment" and should exclude from his or her request "hours that are excessive, redundant or *otherwise unnecessary*." *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 550 (7th Cir. 1999)(emphasis in original)(quoting *Hensley*, 461 U.S at 434). "In the event counsel does not exercise such judgment, the district court may reduce the number of hours accordingly." *Batt v. Micro Warehouse, Inc.*, 241 F.3d 891, 894 (7th Cir. 2001).

1. **Plaintiff's counsel has failed to prove the reasonableness of the work performed because the billing records indicate substantial inefficiency and duplication of effort**

"Though efficiency can sometimes be increased through collaboration, overstaffing cases inefficiently is common, and district courts are therefore encouraged to scrutinize fee petitions for duplicative billing when multiple lawyers seek fees." *Schlacher,* 574 F.3d at 858 (reducing fees from $12475 to $6500 in an uncomplicated, low-stakes FDCPA case where one competent attorney would have sufficed.)

In this case, Plaintiff's counsel Mario Kasalo filed an appearance indicating that he was lead and trial counsel. (Dkt #2). In his declaration in support of his fee petition he seeks a rate of $400 claiming "I have substantial experience in FDCPA litigation, class action and collection defense litigation" and "I have filed and resolved over 275 FDCPA cases in Illinois, Indiana and Michigan, including both individual and class actions." (Dkt #207-1, p.25). Despite these claims, when it came time for the case to go to trial, Mr. Kasalo did not act as trial attorney and instead brought in

attorneys Thomas Nitschke and Heather Blaise to handle the trial.[8] Yet the fee petition provides no explanation as to why the services of these attorneys were necessary.

Each of the three attorneys billed for trial preparation and attendance and they all seek the same rate of $400. Mario Kasalo billed $14,080 in fees for trial attendance while almost all of the $44,957.50 fees sought by Mr. Nitschke and Ms. Blaise are for trial preparation and attendance. These amounts exclude the significant fees that Mr. Kasalo billed for trial preparation work. Mr. Kasalo cannot have it both ways- he cannot contend that he has the experience to command a $400 rate while at the same time lacking the ability to act as trial counsel in the case. The Court should not award Mr. Kasalo his fees for trial attendance[9] and should reduce the amount of fees requested by Blaise & Nitschke, P.C. by 50%.

The billing records also reflect a high degree of inefficiency, including 8.6 hours to draft boilerplate discovery requests, 2.3 hours for the "intake" of Paz, an existing client of Mr. Kasalo, and 7.0 hours in preparing and drafting the complaint, where the first 21 paragraphs were identical to the complaint in Paz I. This time also includes 11 hours researching 1-page offers of judgment that were identical (except for the amount) to the offer accepted in Paz I. *See* Ex. H. Because it is Plaintiff's counsel's burden to exercise billing judgment and remove such entries prior to submission with the Court, his failure to do so warrants a 75% reduction for entries that are show duplication or inefficiency.[10]

2. **The rates requested are not reasonable**

[T]he burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community

---

[8] Thomas Nitschke principally handled the trial.
[9] Defendant has attached an itemization of entries it is specifically objecting to as Group Exhibit H.
[10] The Court should also not award time for conferencing or vague entries and should only award 50% for time spent on unsuccessful motions.

11

for similar services by lawyers of reasonably comparable skill, experience and reputation. *Blum v. Stenson*, 465 U.S. 886, 896, (1984). Mr. Kasalo submitted a declaration of Michael Sanderson stating that he agreed to pay Mr. Kasalo $375 per hour and a retainer agreement with Brenda Washington stating that his hourly rate was $375. (Dkt #207-1, pp.2, 6-8). Neither of these documents show that either individual actually paid Mr. Kasalo the rate of $375/hour. *Stockman v. Glob. Credit & Collection Corp.*, No. 14 C 6862, 2015 WL 4999851, at *3 (N.D. Ill. Aug. 21, 2015)(finding representation agreements "at most…evidence a client's intent to eventually pay Wood and Thompson $327 per hour" but not that the clients actually paid those amounts). Plaintiff further cites to *Gregory v. Access Group., et. al.,* Case No. 1:12-cv-7351 (N.D.Ill.) in support of the rates requested, however, in that case Defendant filed a 1 ½ page objection to the fee petition without any citations and presented a "lackluster defense." *See Gregory*, Dkt #119. The other cases cited by Plaintiff, *Cruz* and *Elseweifi*, involved a settlement and default judgment, respectively, and the rates were not contested. While Judge Shah and Judge Kennelly approved a rate of $375 for Mr. Kasalo, Judge Kendall declined to do so, finding that a rate of $300 was appropriate. *See Nunez v. Midland Funding, et. al.*, Case No. 1:14-cv-00921 (N.D.Ill)(Ex. I hereto); *see also Schlacher,* 574 F.3d at 858.

Kasalo claims his fee increased to $400 on November 1, 2015, yet, oddly his billing entries between 8/6/15-8/25/15 show a rate of $400 per hour which decreased to $375 on 8/25/15. No explanation is given for this discrepancy. Mr. Kasalo also presents no evidence in support of a $400 rate, except for a consumer law survey, (Dkt #207, p.10) but the courts have rejected this type of evidence. *See Stockman*, 2015 WL 4999851, at *4, *citing Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632 (7th Cir. 2011); *Sughayyer v. City of Chicago,* No. 09 C 4350, 2012 WL 2359065, at *9 (N.D. Ill. June 20, 2012). Attorneys Heather Blaise and Thomas Nitschke submit nothing other than their declarations to support their claim that $400 is a reasonable rate for their work in this case. *See Spegon*, 175 F.3d at 556 (7th Cir. 1999)("[a]n attorney's self-serving affidavit alone cannot satisfy the

12

plaintiff's burden of establishing the market rate…"). This Court should award a rate of $300/hour for these attorneys.[11] The lodestar should then be reduced based on Plaintiff's limited success and because it is not proportional to the Plaintiff's recovery.

### 3. **Plaintiff achieved limited success**

The most critical factor of the *Hensley* factors is the degree of success obtained. *Hensley,* 461 U.S. at 436. In determining the degree of success obtained, the court uses a three-part test which looks at "the difference between the judgment recovered and the recovery sought, the significance of the legal issues on which the plaintiff prevailed and, finally, the public purpose served by the litigation." *Connolly v. Nat'l Sch. Bus Serv., Inc.*, 177 F.3d 593, 597 (7th Cir. 1999)*, citing Cartwright v. Stamper*, 7 F.3d 106, 109 (7th Cir.1993). "The standard is whether the fees are reasonable in relation to the difficulty, stakes, and outcome of the case." *Connolly*, 177 F.3d at 597, *citing Bankston v. State of Illinois,* 60 F.3d 1249, 1256 (7th Cir.1995).

As a threshold matter Plaintiff has not met his burden of establishing that he is only seeking fees for his successful claims. It is his burden to maintain the billing records in a manner that would allow the Court to separate the fees he is seeking for distinct claims. *See Hensley,* 461 U.S. at 438.

While the attorney declarations claim the attorneys did not include fees for FCRA claims, (Dkt #207-1, Kasalo Decl., ¶18, Blaise Decl., ¶17, Nitschke Decl., ¶17), because the bills are reconstructed they give no indication as to which time entries were omitted or how the attorneys determined that their time records do not include time spent for litigation of the FCRA claims. This issue is crucial because no fee may be awarded for services on an unsuccessful claim. *See Hensley,* 461 U.S. at 435. It is impossible to determine what, if any billing judgment was exercised because

---

[11] Even if this Court accepts the $375 rate awarded by Judge Shah and Judge Kennelly, that rate should only be awarded for Mr. Kasalo and not Ms. Blaise or Mr. Nitschke who failed to submit any evidence in support of their requested rates. And, while Plaintiff claims Ms. Blaise was awarded $400 in *Gregory v. Access Group., et. al.,* Case No. 1:12-cv-7351 (N.D.Ill.), the briefing in that case demonstrates she only requested a rate of $350. *Gregory,* Dkt #109.

opposing counsel does not disclose their total hours in the case and refused to do so when defense counsel requested the information. "A judge could try to estimate how much time would reasonably have been devoted to the winning claims, had no clunkers been presented. But if that attempt would be futile (the district judge here permissibly reached that conclusion), there is nothing to do but make an across-the-board reduction that seems appropriate in light of the ratio between winning and losing claims." *Richardson v. City of Chicago, Ill.,* 740 F.3d 1099, 1103 (7th Cir. 2014); *see also Spegon,* 175 F.3d at 558–59. The Court should reduce the lodestar to account for Plaintiff's limited success.

    i.  **Plaintiff recovered a fraction of the damages he sought**

Plaintiff misleadingly claims that because Plaintiff was awarded $1000, he "obtained a complete success: a judgment in his favor and the maximum statutory award" and "[b]y prevailing at trial for the maximum statutory damages that could have been obtained in this case, which is $1000, Plaintiff has achieved a high degree of success."(Dkt #207, p.5) Plaintiff asks this Court PRA to pretend that he never brought a claim under the FCRA and never sought actual damages under the FDCPA. In fact at trial Plaintiff asked the jury for an award of tens of thousands of dollars in actual damages under the FDCPA and FCRA. The jury, instead, awarded him only $1000 in FDCPA statutory damages- a fraction of the damages he sought and nothing for the FCRA claim.

    ii.  **Plaintiff's conduct in prolonging the litigation did not serve a public purpose**

Plaintiff cites *Morales v. City of San Rafael*, 96 F.3d 359, 365, *as amended on denial of rehearing and rehearing en banc*, 108 F.3d 981 (9th Cir. 1997), claiming "Success is not measured only by the amount of recovery but also in terms of the significance of the legal issue on which the plaintiff prevailed and the public purpose the litigation served." (Dkt #207, p.3). *Morales*, however, involved an unlawful arrest and the verdict "constitute[d] a warning to law-enforcement officers not to treat civilians unconstitutionally." *Id.* In contrast, this case did not involve the vindication of important civil and constitutional rights. Instead, the case involved a mistake made by PRA in failing to

14

request deletion of Paz's debt after the settlement of Paz I. As Steve Zahn testified, this was a "Very rare miss. In fact, I think our first one of this [Defendant's inadvertent failure to close the account] kind." Steve Zahn Dep.,14:22- 14:23. Defendant testified that it doesn't "know that we've ever been sued for failing to delete a tradeline…" Steve Zahn Dep., 24:23-24:25. The issue here impacted only Plaintiff and did not serve a greater public purpose.

4. **The fees requested are not proportional to the jury award.**

While the Seventh Circuit has not formulated any mechanical rules requiring that a reasonable attorney's fee be no greater than some multiple of the damages claimed or recovered, the Court has noted that "proportionality concerns are a factor in determining what a reasonable attorney's fee is. *Moriarty v. Svec*, 233 F.3d 955, 967–68 (7th Cir. 2000); *see also A. Bauer Mechanical, Inc. v. Joint Arbitration Bd. of Plumbing*, 562 F.3d 784, 793 (7th Cir. 2009); *Nunez v. Midland Funding LLC et. al.*, Case No. 1:14-cv-00921 (N.D.Ill.). In *Catalan v. RBC Mortg. Co.*, 2009 WL 2986122 (N.D.Ill. 2009), the court reduced the lodestar sum by 40% where plaintiff claimed $65,000 in damages at trial but was only awarded $11,100 by the jury. *See also Montanez v. Simon*, 755 F.3d 547, 556 (7th Cir. 2014)(the judge did not abuse her discretion by slashing the lodestar by 50% where plaintiff lost four out of six claims and obtained a verdict of $2000).

In sum, the Court should award Plaintiff's counsel approximately $5000 (the amount of Plaintiff's lodestar as of the date of Defendant's First Offer and an amount consistent with the attorneys' fees the parties agreed to in Paz I) or not more than the $10,000 approximately incurred at the time of the Second and Third Offers. In the alternative, should the Court determine that Plaintiff's counsel is entitled to fees after Defendants' offers, the lodestar should be reduced by 75% (to account for the limited success obtained by the Plaintiff and the proportionality of the fees to the jury award) for a total of approximately $20,000. This amount is over 20 times the jury award and it is well within this Court's discretion to make such an award.

WHEREFORE, Defendant Portfolio Recovery Associates, LLC, respectfully requests that this Court deny Plaintiff's Motion for Attorneys' Fees and Costs and award fees and costs consistent with Defendant's calculations.

      Respectfully submitted,

      PORTFOLIO RECOVERY ASSOCIATES, LLC, Defendant

      */s/ Jennifer W. Weller*

      Jennifer W. Weller