# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **ISAAC PAZ,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 14 C 9751** |
| **v.** | ) | |
| | ) | **Magistrate Judge** |
| **PORTFOLIO RECOVERY** | ) | **Maria Valdez** |
| **ASSOCIATES, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| | ) | |

## <u>REPORT AND RECOMMENDATION</u>

Maria Valdez, Magistrate Judge

      This matter was referred to the Court to issue a Report and Recommendation on the parties' competing petitions for attorneys' fees and costs: (1) Plaintiff Isaac Paz's ("Paz") Motion for Attorneys' Fees and Costs [207]; and (2) Defendant Portfolio Recovery Associates, LLC's ("PRA") Motion for Costs [192]. Paz moves under the Fair Debt Collection Practices Act ("FDCPA") for $187,410.00 in attorneys' fees and $2,743.63 in costs. PRA moves under Federal Rules of Civil Procedure ("Rule") 54 and 68 for $3,064.18 in costs. For the reasons that follow, the Court respectfully recommends that Paz's motion is GRANTED WITH MODIFIED RELIEF, and PRA's motion is GRANTED.

## BACKGROUND

Almost two years passed between this lawsuit's December 2014 filing, and its September 2016 resolution at trial. However, the subject matter of this case is a simple outgrowth of a prior related case: *Paz v. Portfolio Recovery Associates, LLC.*, 14 C 4449 (N.D. Ill. 2014) ("*Paz I*"). In *Paz I*, Paz defaulted on a Chase credit card loan. PRA purchased the debt and was sued by Paz in June 2014. Paz alleged PRA failed to notify credit reporting agencies that Paz's debt was disputed, and this was a violation of the FDCPA.

The parties settled *Paz I* 84 days after filing by way of PRA's July 1, 2014 Rule 68 Offer Of Judgment ("Offer"), and Paz's July 14, 2014 acceptance thereof. That accepted Offer gave Paz $1,001.00 for his claims and "reasonable attorneys' fees and costs through the date of Paz's acceptance of this offer, in an amount agreed upon between the parties, and if no agreement could be made, to be determined by the court." The parties' attorneys agreed to $4,500.00 in reasonable attorneys' fees and costs after one round of emails. Similarly, the parties agreed that PRA would delete Paz's Chase credit card debt from his credit report.

However, when credit agencies subsequently inquired about the status of Paz's debt, PRA mistakenly responded that Paz's debt was still owed. That mistake spurred the instant December 5, 2014 putative class action lawsuit that complained PRA's actions were violation of the FDCPA, 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), 1692e(10), 1692f, and 1692f(1); and also a violation of the Fair Credit Reporting Act ("FCRA") 15 U.S.C. §1681s-2(b) both willfully §1681n, and negligently §1682o.

Soon thereafter on January 27, 2015, PRA's counsel emailed Paz's counsel. PRA's email requested that Paz send a settlement demand letter to PRA. Paz did not respond to PRA's email that day. PRA then followed up its correspondence by sending Paz three formal Rule 68 Offers on January 28, 2015, February 26, 2015, and March 27, 2015. The three Offers mirrored the terms of the accepted Offer in *Paz I*. Specifically, each Offer stated PRA would "allow judgment to be entered against it," for "[$1,500.00] [$2,500.00] [$3,501.00, respectively] as to Plaintiff arising from Plaintiff's claims against Defendant as alleged in Plaintiff's complaint." The Offers also stated: "Judgment shall also be entered against Defendant for reasonable attorneys' fees and costs through the date of Plaintiff's acceptance of this Offer, in an amount agreed upon between the parties, and if no agreement can be made, to be determined by the Court." Lastly, the Offers stated: "This offer of judgment is made solely for the purposes specified in Rule 68 of the Federal Rules of Civil Procedure and is not to be construed as an admission that Defendant is liable in this action, that Plaintiff has suffered any damage, or for any other reason."

Paz did not respond to any of PRA's three Offers. Instead Paz continued litigating this case through the usual course of discovery, motion practice, an unsuccessful attempt to add class claims, and a December 14, 2015 summary judgment motion that saw PRA prevail over all of Paz's claims, but for Paz's newly argued FDCPA §1692e(8) claim, and existing FCRA §1682o negligence claim.

Paz then prepared for trial on the sole issue of whether PRA could prove it is entitled to the *bona fide* error defense on the FDCPA claim, and whether PRA was

liable for a violation of §1681o of the FCRA. Paz's attorney, Mario Kasalo ("Kasalo") performed the lion's share of the pretrial workload including the July 27, 2016 proposed pretrial order, which listed just five witnesses, nine motions *in limine*, and thirteen exhibits. On August 25, 2016, Kasalo also recruited the aid of two additional attorneys in preparation for trial: Heather Blaise ("Blaise") and Thomas Nitschke ("Nitschke"). Their combined $44,957.50 fees are included in the $187,410.00 requested by Kasalo.

On August 30, 2016, PRA sent a final pre-trial settlement offer to Paz. In that offer, PRA offered to settle all damages, attorneys' fees, and costs for $25,000.00. Paz rejected this offer and proceeded to trial. On the Final Pretrial Order, a total of four witnesses and eleven exhibits were to be presented. Similarly, at the September 7, 2016 trial, Paz valued his FDCPA claim at the maximum $1,000.00 statutory damages and $21,000.00 in actual damages. Paz valued his FCRA claim at $5,000.00 in actual damages.

The following day on September 8, 2016, the jury ultimately found for Paz on both counts. With regard to Paz's FCRA claim, the jury found PRA was negligent in its handling of Paz's disputes with the credit reporting agencies in violation of the FCRA. However, the jury found that Paz had sustained no actual damages as a result of PRA's negligence. The jury likewise only awarded Paz the maximum $1,000.00 in statutory damages for his FDCPA claim, and found that Paz had not sustained any actual damages as a result of PRA's violation of the FDCPA. Despite

recovering no actual damages for either claim, Paz now asks for $187,410.00 in attorneys' fees and $2,743.63 in costs.

## DISCUSSION

### I. <u>Attorney's Fees</u>

The parties cite three sources of law as bases for recovering and/or denying fees and costs: (1) the fee shifting provisions of the FDCPA; (2) the text of Rule 54; and (3) the text of Rule 68. As these sources of law have a degree of interplay, the Court shall explain how they operate in tandem.

Paz's attorneys, namely Kasalo, are presumptively entitled to some amount of attorneys' fees. This is because the FDCPA rewards successful plaintiffs by awarding them "the costs of the action, together with a reasonable attorney's fee as determined by the Court." 15 U.S.C. §1692k(a)(3); *see also Schlacher v. Law Offices of Phillip J. Rotche & Assoc., P.C.*, 574 F.3d 852, 856 (7th Cir. 2009). "A successful [FDCPA] action […] is merely one that establishes liability. That the plaintiff has no[,] or merely nominal damages is irrelevant," to whether a successful plaintiff's attorney may seek fees. *Crabill v. Trans Union, LLC.*, 259 F.3d 662, 665 (7th Cir. 2001); *see also Zagorski v. Midwest Billing Services, Inc.*, 128 F.3d 1164, 1166 n. 3 (7th Cir. 1997) (*per curiam*); *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 345 nn. 3–4 (7th Cir. 1997).

### A. Lodestar Calculation

Courts determine the amount of fees to award a prevailing plaintiff's attorney

by using the lodestar method - multiplying the amount of hours reasonably expended on the litigation, by a reasonable hourly rate. *Johnson v. GDF, Inc.*, 668 F.3d 927, 929 (7th Cir. 2012) (citing *Pickett v. Sheridan Health Care Center*, 664 F.3d 632, 639 (7th Cir. 2011)). There is a "strong presumption" that the lodestar method yields a reasonable fee. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010); *see also Pickett*, 664 F.3d at 639. However, the plaintiff bears the burden of proving his attorney's fees are reasonable. *Hensley v. Eckerhard*, 461 U.S. 424, 437 (1983). A plaintiff must also undertake a good faith effort to exclude excessive, redundant, or unnecessary hours. *Id*. at 434. The court, for its part, must exclude hours it deems inadequately documented or not reasonably expended on the litigation. *Id*. at 433–34; *see also Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 550 (7th Cir. 1999).

After calculating the lodestar amount, courts have wide discretion to adjust that amount. *Hensley,* 461 U.S. at 433. Specifically, a court "can adjust that figure to reflect various factors including the complexity of the legal issues involved, the degree of success obtained, and the public interest advanced by the litigation." *Schlacher*, 574 F.3d at 856-57 (citing *Connolly v. Nat'l Sch. Bus Serv., Inc.*, 177 F.3d 593, 597 (7th Cir. 1999)).[1] However, the most critical factor in determining the reasonableness of the award "is the degree of success obtained." *Zagorski*, 128 F.3d at 1166-67 (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)). "Success must be

---

[1] In addition, courts may also consider: (1) the time and labor required; (2) the novelty and difficulty of the legal questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) fixed or contingent representation; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; (12) and awards in similar cases. *Hensley*, 461 U.S. at 430 n. 3.

measured not only in the amount of the recovery but also in terms of the principle established and the harm checked." *Zagorski,* 128 F.3d at 1166-67.

"If a plaintiff has achieved only partial or limited success," a district court may find plaintiff's counsel's lodestar to "be an excessive amount" and eliminate specific hours or reduce the overall award "to account for the limited success." *Hensley*, 461 U.S. at 436–37. There is "no precise rule or formula" for doing so. *Id*. at 436; *see also Richardson v. City of Chicago*, 740 F.3d 1099, 1103 (7th Cir. 2014) (holding that "[n]o algorithm is available" for adjusting a lodestar to reflect partial or limited success).

### B. Effect of Rule 68 Offer of Judgment

A Rule 68 Offer of Judgment is a procedural device that encourages settlement and discourages protracted litigation. *Sanchez v. Prudential Pizza, Inc.,* 709 F.3d 689, 691 (7th Cir. 2013) (citing *Webb v. James,* 147 F.3d 617, 620 (7th Cir. 1998)); s*ee also Marek v. Chesny*, 473 U.S. 1, 5 (1985). Specifically, Rule 68 permits a party defending a claim to serve on an opposing party "an offer to allow judgment on specified terms, with the costs then accrued." *Sanchez,* 709 F.3d at 691 (citing Fed. R. Civ. P. 68(a)). "If the offer is accepted in writing within 14 days, either party may file the offer and acceptance with the court," and "[t]he clerk must then enter judgment." *Id.* (citing Fed. R. Civ. P. 68(a)). "This means that the court has no discretion to alter or modify the parties' agreement." *Id.* (citing *Webb,* 147 F.3d at 621 (internal citations omitted)). "If the offer is rejected and the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree

must pay the *costs incurred after the offer was made.*" *Id.* (citing Fed. R. Civ. P. 68(d) (emphasis added)).

In addition to cutting off recovery of a plaintiff's costs, a Rule 68 Offer of Judgment can also cut off the plaintiff's attorney's *fees* accrued after the date of the Offer, if the plaintiff's eventual recovery is less than the Offer. *Id.* However, in order for this to occur, the relevant underlying statute must define "costs" as including attorney's fees. *Marek*, 473 U.S. at 6. In this case, under the FDCPA, attorney's fees are not considered to be a part of the "costs." *Queen v. Nationwide Credit, Inc.*, No. 10 C 1445, 2010 WL 4006676, at *3 (N.D. Ill. Oct. 7, 2010) (citing *Marek*, 473 U.S. at 9 n.2) ("[the FDCPA] lists attorney's fees as part of the civil liability of the debt collector, but it does not provide that attorney's fees are part of recoverable costs. […] Thus, the statute plainly separates costs from attorney's fees, such that Rule 68 provides no temporal limitation on recoverable attorney's fees in FDCPA cases."). Therefore under Rule 68, although Paz did not accept any of PRA's three Offers, Kasalo may still seek attorney's fees accrued after the date of PRA's last Offer, March 27, 2015 (the "Last Offer"), regardless of whether PRA's Last Offer was more favorable than Paz's result at trial.

However, Rule 68 is still applicable in two respects. First, as explained in the Court's discussion of PRA's motion for costs, Rule 68 provides a basis for PRA to recover its costs incurred after March 27, 2015, if the Court determines PRA's Last Offer was more favorable than Paz's result at trial. Second, and more critically for the instant discussion of Kasalo's fees - rejected settlement offers, and indeed Rule

68 Offers of Judgment, are highly probative of whether an attorney's fee request is reasonable because rejected Offers serve as a direct comparator of how successful a plaintiff might have been had the plaintiff accepted the Offer. *See Moriarty v. Svec*, 233 F.3d 955, 967 (7th Cir. 2000) ("[S]ubstantial settlement offers should be considered by the district court as a factor in determining an award of reasonable attorney's fees even where Rule 68 does not apply.") (internal citation omitted).

Here, Paz argues that the Offers should have no preclusive effect in any way. Paz says he was right not to entertain PRA's three Offers because PRA's Offers stated: "This offer of judgment is made solely for the purposes specified in Rule 68 of the Federal Rules of Civil Procedure and is not to be construed as an admission that Defendant is liable in this action, that Plaintiff has suffered any damage, or for any other reason." Citing *Fisher v. Kelly*, 105 F.3d 350 (7th Cir. 1997) and *Pigeaud v. McLaren*, 699 F.2d 401 (7th Cir. 1983), Paz says that had he accepted any of PRA's Offers, this "disclaimer" language would deny him fee recovery as he would no longer be the "prevailing party." The Court disagrees for two reasons.

First, neither *Fisher* nor *Pigeaud* supports Paz's arguments. The plaintiffs in both cases were not "prevailing parties" because they accepted *de minimis* settlement values. These small-value settlements prevented both the *Fisher* and *Pigeaud* courts from determining the most critical factor in deciding whether the plaintiffs were "prevailing parties" – whether their victories were "on the merits." *See Fletcher v. City of Fort Wayne, Ind.*, 162 F.3d 975, 977 (7th Cir. 1998) (finding sizable settlement amounts may make a plaintiff the "prevailing party" despite

disclaimer language). Unlike both the *Fischer* and *Pigeaud* offers, PRA's instant Offers were not *per se de minimis*. PRA's Last Offer in particular compensated Paz for 350% of the statutory and actual damages he recovered at trial. After applying the relevant standards, it is clear to the Court that PRA's Last Offer explicitly would have compensated Paz for a value exceeding the value he would have gotten at trial, and was thus fully on the merits. Despite Paz's argument to the contrary, regardless of whether the wording of PRA's Offers contained disclaimer language, the Seventh Circuit has ruled that language is not an outright bar to an award of attorney's fees so long as the settlement offer value was not *de minimis*. *See Fletcher,* 162 F.3d at 977.

Second, and more critically, PRA's Offers would have awarded the very things Paz claims would be withheld: "reasonable attorneys' fees and costs though the date of Plaintiff's acceptance of this [Offer], in an amount agreed upon between the parties, and if no agreement can be made to be determined by the court." Though Paz argues that accepting the Offer would have curtailed his recoverable amount of fees and costs following trial, he is as correct as he is unpersuasive. Accepting the Offer would have equally curtailed the amount of work necessary to reach that result at trial. Likewise, no court would ignore the Offer's clear statement that fees were to be awarded, despite the parties' inability to settle on an exact amount. *See Robinson v. City of Harvey, Ill.*, 617 F.3d 915, 917 (7th Cir. 2010) ("[A] prevailing party is entitled to collect the legal expenses incurred in obtaining an award of fees for success on the merits.").

Indeed, Paz's attorney Kasalo has accepted Offers of Judgment similar to the Offer at play here, at later stages of litigation for less value, and those Offers provided Kasalo and the plaintiffs he represented with terms nearly identical to the terms at bar – including the challenged non-admission of liability language. *See e.g. Cox v. Blitt and Gaines, P.C.*, Case No. 10 C 563 (N.D. Ill. 2010) (offer of $1001.00 "plus courts costs together with reasonable attorney fees incurred as of the date of acceptance of this offer" accepted more than six months after filing); *Terihaj v. Nationwide Credit Inc.*, Case No. 09 C 4865 (N.D. Ill. 2009) (offer of $1500.00 "plus reasonable attorneys' fees and costs to date" where offer specifically was not to be "construed as an admission of any liability" accepted 80 days after filing). And Paz himself, in the litigation filed against PRA just prior to the instant case, also accepted a Rule 68 Offer even though it included the offending language. *See Paz v. Portfolio Recovery Assoc., LLC*, No. 14 C 4499, Doc. No. 8.

All of this belies Paz's argument that the asserted language made the Offer in this case a legal nullity. The Court recommends that the Offer made in this case be considered as an element of whether the requested fees and costs are reasonable.

## C.     Reasonableness of the Fee Request And Degree of Success

Plaintiff has the burden of showing that the lodestar requested is reasonable. *Hensley*, 461 U.S. at 433. Paz argues that his attorney's time expenditures are reasonable and he should be awarded his full fees, even after the date of PRA's Last Offer. PRA in turn poses a two-pronged opposition to the reasonableness of Kasalo's

time expenditures. First, PRA argues the Court should use its discretion to award no fees after the date PRA tendered its Last Offer since that would lead to a disproportional fee in light of the actual recovery. Second, PRA argues that if the Court chooses to award fees after PRA's Last Offer, it should award fees subject to PRA's individual objections to Kasalo's time entries. Finally, PRA urges the Court to adjust Plaintiff's lodestar to account for the degree of success obtained in light of the overall fee request.

### 1. Extent of Success on the Merits

Paz asserts this litigation ended with a "successful result." Paz is technically correct. Paz did prevail on two claims at summary judgment, which entitled him to a trial. Likewise, because statutory damages are available per case, not per violation, it "does not matter in what way, or how many times, [PRA] violated the FDCPA," Paz received his maximum statutory recovery. *See Slick v. Portfolio Recovery Assocs., LLC*, 111 F. Supp. 3d 900, 902 (N.D. Ill. 2015). However, this is not the only factor in considering whether Paz reached a successful result.

Notably, "the degree of the plaintiff's success can be measured by the number of claims won and lost, but it can also be judged in light of the damages obtained compared to the resources expended to obtain them." *World Outreach Conference Ctr. v. City of Chicago*, No. 06 C 2891, 2017 WL 587265, at *10 (N.D. Ill. Feb. 14, 2017) (citing *Montanez v. Simon*, 755 F.3d 547, 556 (7th Cir. 2014)). As such, the

Court cannot ignore the fact that Paz initially brought eight claims, only two of which remained for determination at trial.

Similarly, while Paz prevailed on his FDCPA claim, he only recovered modest statutory damages, and failed to obtain any actual damages. Statutory damages under the FDCPA are assessed based upon the "nature, frequency, and persistence of any violation of the FDCPA . . . and the extent to which that violation was intentional." 15 U.S.C. § 1692k(b)(1). Actual damages, however, require additional proof of evidence that would substantiate the claim. *Muha v. Encore Receivable Mgmt., Inc.,* 558 F.3d 623, 629 (7th Cir. 2009) ("Were the plaintiffs seeking actual damages rather than just statutory damages, they would have to present some evidence that they were misled to their detriment."). Arguing for actual damages would have necessitated additional discovery concerning financial, mental, and/or familial pressures Paz might have experienced. Without actual damages in play, the discovery and certainly the trial would have undoubtedly been less extensive, and would have seen Paz reach the same result, albeit at a much lower cost.

Instead, the decision for Paz to reject PRA's Last Offer of $3,501.00 and to go to trial was based on one reason – attempting to get more than $2,501.00 in actual damages. In hindsight for the Paz, the decision to expend resources after the Last Offer was a poor decision. Not only was Paz risking a damage award less than the Offer provided (and the possibility of being responsible for paying PRA's costs), he was basing that risk on the quest to secure greater actual damages with evidence consisting only of his testimony that he suffered from a lack of peace of mind and as

a result, had emotional distress. Paz's evidence was thin as determined by the jury. "When an alleged violation is trivial, the "actual damage[s]" sustained, §1692k(a)(1), will likely be *de minimis* or even zero." *Jerman v. Carlisle*, 559 U.S. 573, 598 (2010). As a result, the Court finds that it was an unreasonable litigation decision to go forward to trial on such weak grounds.

More importantly, "plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the *benefit the parties sought* in bringing suit." *Hensley*, 461 U.S. at 433 (emphasis added). A substantial offer of settlement may foreclose some fees if "the offered amount appears to be roughly equal to or more than the total damages recovered by the prevailing party." *Moriarty*, 233 F.3d at 967. In this regard, the barometer for measuring Paz's particular degree of success changed after the introduction of PRA's Last Offer.

When looking at the benefit obtained by Paz himself, the $3,501.00 offered in PRA's third Offer would have been three-and-a-half times the amount eventually recovered at trial. Instead, Paz secured much less at trial than the Offer provided. Paz would be entitled to recover attorneys' fees arguably, but that would not go to benefit him in pocket – counsel would recover his attorneys' fees and, given the lack of limitation on fees under the FDCPA in the context of Rule 68 Offers, counsel was not risking anything going forward. The primary benefit – $187,410.00 in fees, would be derived by Paz's attorneys alone. Paz's arguments to the contrary are a pallid attempt to gloss over the strategic decision to take a case to trial solely for the

possibility of actual damages when the matter could have settled far sooner, and for a generously fair value to both Paz and his attorney.

Paz was not required to take a settlement offer. But the fact that he would have been in a better position had he accepted PRA's Last Offer is a substantial factor for the Court to consider in determining the reasonableness of the fees requested. *See Hensley*, 461 U.S. at 436–37. (explaining that if "a plaintiff has achieved only partial or limited success," a district court may find plaintiff's counsel's lodestar to "be an excessive amount" and eliminate specific hours or reduce the overall award "to account for the limited success"); *Moriarty*, 233 F.3d at 955 (explaining that a court may look to substantial settlement offers to determine the reasonableness of the fee award sought).

Here, Paz's litigation decision to go to trial after the Last Offer was an unreasonable decision. The Court recommends that Paz's fees and costs incurred after the date of the final Offer of Judgment in this case be denied. [2]

## 2. Unnecessary Trial Counsel and Paralegal

The decision to go forward to trial was unreasonable in light of the complete statutory relief provided to the Plaintiff in the Offer. However, even if this Court did not reach that conclusion, it is clear that the decision to go to trial and hire two

---

[2] A separate basis for the reduction of fees may be made in this case based on the disproportionality of the fees requested, $187,410.00, and the recovery received, $1,000.00. While disproportionality alone is a weak reed on which to adjust fees, the Seventh Circuit allows consideration of disproportionality in determining reasonableness, *Schlacher*, 574 F.3d at 857. Similarly, a request for fees that is a large multiple of the amount awarded "raises a red flag" and should be of concern to the court. *Anderson v. AB Painting and Sandblasting Inc.,* 578 F.3d 542, 546 (7th Cir. 2009).

additional attorneys and a paralegal in this case likewise was unnecessary and excessive.

First, this case was a very standard FDCPA and FCRA litigation. It involved only a single plaintiff. No new principles of law were established in this litigation, and the only harm checked was the harm entitling Paz to statutory damages, even though Paz requested much more in actual damages. *See Zagorski,* 128 F.3d at 1167 (noting courts also consider "the principle established and the harm checked"). More critically however, this litigation shared nearly identical facts, the same parties, and even the same counsel with *Paz I*, which was settled less than six months prior to the filing of this lawsuit. This is important in two respects.

First, given the simplicity of the case, the Court sees no need to have two attorneys and a paralegal work on this case at trial. In Kasalo's declaration in support of his fee petition, he states he has substantial FDCPA litigation experience, and has successfully resolved over 275 FDCPA cases, including a list of ten prior or current cases in the Northern District of Illinois, for which he is lead counsel. From a review of Kasalo's cases, the comparative ease of this case, and the fact that Kasalo had already prosecuted the underlying *Paz I*, the Court believes that Kasalo would have been more than capable handling the trial in this case alone. This is bolstered by the fact that the trial only lasted two days, contained just four witnesses, and contained a mere eleven exhibits. As such, the hiring of an additional two attorneys and a paralegal was unreasonable.

Second, the Court finds no reason to provide counsel with a windfall merely because liability was a fair bet (and thus entitlement to attorneys' fees), while securing an actual damage amount greater than the amount offered in the Last Offer was going to be a hard sell. Paz was in a risky posture going into trial given the presence of the Offer. Allowing attorneys to overwork the trial was no benefit to Paz. The Court therefore, in its discretion, recommends that the fees incurred by the unnecessary additional trial attorneys and paralegal are unrecoverable.[3]

### 3. Reasonableness of Kasalo's Hourly Rate

Having determined that Paz as a prevailing party is entitled to a reasonable fee award, the Court must then determine a reasonable hourly rate. A "reasonable" hourly rate is "one that is derived from the market rate for the services rendered." *Reid v. Unilever United States, Inc.*, No. 12 C 6058, 2015 WL 3653318, at *14 (N.D. Ill. June 10, 2015), *aff'd sub nom. Martin v. Reid*, 818 F.3d 302 (7th Cir. 2016) (citing *Pickett*, 664 F.3d at 640) (internal quotation marks and citations omitted). Thus, an attorney's actual billing rate for similar litigation is appropriate to use as the market rate. *Id.* If an attorney uses contingent fee arrangements, the "next best evidence" of the attorney's market rate is "evidence of rates similarly experienced attorneys in the community charge paying clients for similar work and evidence of fee awards the attorney has received in similar cases." *Spegon*, 175 F.3d at 555. The

---

[3] The Court also need not address PRA's specific objections to Kasalo's individual time entries prior to March 27, 2015 as it believes its decision to curtail fee recovery after March 27, 2015 is a sufficient remedy for Paz's unreasonable course of litigation. Additionally, Kasalo's request for an additional 14.2 additional attorney hours for work expended in drafting his reply to Defendant's fee petition is also denied.

Seventh Circuit has expressed "a preference for third party affidavits that attest to the billing rates of comparable attorneys." *Pickett,* 664 F.3d at 640.

The party seeking fees "bears the burden of producing satisfactory evidence— in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community." *Id.* (internal quotation marks and citation omitted). If that burden is satisfied, the burden shifts to the other party to offer evidence that sets forth a "good reason" why a lower rate should be awarded. *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205,* 90 F.3d 1307, 1313 (7th Cir. 1996). If the party seeking fees fails to carry its burden, the Court may properly "make its own determination of a reasonable rate." *Pickett,* 664 F.3d at 640.

Kasalo seeks a rate of $375 per hour.[4] In support of this rate, Kasalo has submitted three fee agreements with prior clients, wherein his rate is listed at $375 per hour. Additionally, Kasalo has submitted a declaration in support that states he has substantial FDCPA litigation experience and has successfully resolved over 275 FDCPA cases, including a list of ten prior or current cases in the Northern District of Illinois, for which he is lead counsel.

After a review of Kasalo's materials in support, after taking into account the hourly rate for attorneys with similar qualifications and experience, and after taking into account the needs of the case at bar, the Court finds a rate of $375 per hour is reasonable for Kasalo. *See Kasalo v. Trident Asset Mgmt., LLC*, No. 12 C 2900, 2015 WL 2097605, at *1 (N.D. Ill. May 3, 2015) (Kasalo's $375 per hour rate

---

[4] Kasalo also billed a total of 256.1 hours at a rate of $400-per-hour. However, Kasalo did not charge this rate prior to the date of PRA's Last Offer, and the Court has curtailed recovery after that date. Therefore, this higher rate is excluded from the Court's calculation and the Court need not address whether Kasalo's higher rate is reasonable.

found reasonable); *see also Spruce v. Midland Funding, LLC*, No. 14 CV 1316, 2015 WL 3484243, at *2 (N.D. Ill. June 1, 2015) (Kasalo's $375 per hour rate again found reasonable).

Between the date of Kasalo's first time entry and the date of PRA's Last Offer, March 27, 2015, Kasalo billed a total of 29 hours. Multiplying this number by Kasalo's $375 per hour reasonable hourly rate yields a lodestar amount of $10,875.00. Kasalo therefore should be entitled to this amount of fees.

## II.    **Costs Due**

Both Paz and PRA petition the Court for costs. Paz petitions the Court for $2,743.63 in costs. PRA petitions the Court for $3,064.18 in costs. PRA states it is entitled to costs under Rule 54, which allows costs – other than attorney's fees – to the prevailing party. However, as PRA's cost amount only includes costs incurred after tendering its Last Offer, the Court believes PRA feels it is more substantially entitled to all fees after the date of its Last Offer, under Rule 68. The Court will address that argument.

Unless the district court otherwise directs, a prevailing party is allowed costs as a matter of course. Fed. R. Civ. P. 54(d); *see also* 15 U.S.C. §1692k(a)(3).[5] And a court should award costs to a party that prevails on a substantial part of the litigation, even when a party does not prevail on every claim. *Testa v. Village of Mundelein*, 89 F.3d at 443, 447 (7th Cir. 1996); *Slane v. Mariah Boats, Inc.*, 164 F.3d 1065, 1068 (7th Cir. 1999). However, in a case with mixed results, a court retains especially broad discretion to award or deny costs. *Gavoni v. Dobbs House,*

---

[5] Likewise, under the FDCPA, costs are also awarded to a prevailing plaintiff.

*Inc.*, 164 F.3d 1071, 1075 (7th Cir. 1991). The "party seeking an award of costs carries the burden of showing that the requested costs were necessarily incurred and reasonable." *Trs. of the Chicago Plastering Inst. Pension Trust v. Cork Plastering Co.*, 570 F.3d 890, 906 (7th Cir. 2009).

In cases where a Rule 68 Offer has been made, Rule 68 modifies the cost-shifting provision of Rule 54(d). It requires even a prevailing plaintiff, who rejects a formal Offer more favorable than the judgment he finally obtains, to "pay the costs incurred after the making of the offer." *Grosvenor v. Brienen*, 801 F.2d 944, 945 (7th Cir. 1986) (citing *Delta Air Lines, Inc. v. Aug.*, 450 U.S. 346, 351-56 (1981). A court looks to the dollar amount of the final judgment itself in determining whether the unaccepted offer amount would have been more favorable. *Payne v. Milwaukee Cty.*, 288 F.3d 1021, 1024 (7th Cir. 2002) (citing *Marek,* 473 U.S. at 5) (Rule 68 applicable because plaintiff's $10,400.00 trial judgment was less than either of defendant's Rule 68 Offer amounts, irrespective of plaintiff's counsel's fee amounts).

To get around the real implications of a Rule 68 Offer of Judgment, Paz offers a single argument – he cites to testimony in another case in an attempt to argue that the aforementioned disclaimers of liability contained in the body of PRA's Offers invalidates their status as proper Rule 68 Offer of Judgment. This position is unsupported. The cases Paz cites in support only show that a disclaimer of liability contained in a Rule 68 Offer of Judgment has bearing on whether or not the settlement was *de minimis* and thus whether the plaintiff is a "prevailing party,"

not that disclaimer language will *per se* invalidate a Rule 68 Offer of Judgement. *See Fletcher*, 162 F.3d at 977; *see also Delta Air Lines*, 450 U.S. at 349.

As a result, simple math comes into play when applying the consequences of the Last Rule 68 Offer to Paz. The amount Paz recovered at trial – $1,000.00 – is facially less than the amounts contained in each of PRA's three Offers – $1,500.00, $2,500.00, and $3,501.00. Accepting PRA's Last Offer would have awarded Paz $3,501.00 in damages, in addition to reasonable attorneys' fees and costs. As such, for the reasons discussed *supra*, Paz's trial result was less favorable than any of the three Offers. Therefore PRA is entitled to its costs after the date of its final Rule 68 Offer. The Court finds it appropriate to recommend an award to PRA for $3,064.18 in costs, representing the amount of costs PRA incurred following PRA's March 27, 2015 Last Offer.

Further, because Paz is a "prevailing party" under Rule 54, the Court will recommend he be awarded $436.34 in costs, representing the amount of costs Paz requested and incurred prior to the date of PRA's March 27, 2015 Offer.

## CONCLUSION

For the aforementioned reasons, the Court respectfully recommends that Paz's Motion for Attorney Fees and Costs [207] be GRANTED WITH MODIFIED RELIEF and specifically recommends that Plaintiff may recover $10,875.00 in fees and $436.34 in costs. The Court further recommends that PRA's Motion for Bill of

Costs [192] be GRANTED and specifically recommends that PRA may recover $3,064.18 in costs from the Plaintiff.

The parties have fourteen days from the date of service of this Report and Recommendation to file objections with the District Court. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. 636(b)(1). Failure to object to this Report and Recommendation constitutes a waiver of the right to appeal. *Tumminaro v. Astrue*, 671 F.3d. 629, 633 (7th Cir. 2011).

**SO ORDERED.**                    **ENTERED:**

**DATE:  August 2, 2017**

United States Magistrate Judge